**In re ROTHFARB.**

No. 78558.

District Court, S. D. New York.

Jan. 3, 1942.

Leon & Weill and Otterbourg, Steindler & Houston, all of New York City (Sidney M. Offer, Aaron Rosen and Arnold A. Jaffe, all of New York City, of counsel), for bankrupt.

Tanzer & Mullaney, of New York City (Robert P. Weil, of New York City, of counsel), for objecting creditor.

LEIBELL, District Judge.

On April 21, 1941, Samuel Rothfarb filed a voluntary petition in bankruptcy in this court. At a first meeting of creditors the bankrupt was examined by the referee and the meeting was closed. No trustee was elected because there were no assets. In the usual course, notice of bankrupt's application for a discharge was given and Mary Harris, a judgment creditor, on July 21, 1941, filed objections containing two specifications as follows:

"1. The bankrupt has failed to keep or preserve books of account or records from which his financial condition or business might be ascertained.

"2. The bankrupt has committed an offense punishable by imprisonment as provided under the Bankruptcy Act in that he has made false oath in his sworn Statement of Affairs attached to his schedules, he having knowingly, falsely and fraudulently set forth therein that he has received no net income from his trade or profession during each of the two years immediately preceding the filing of the original petition herein."

A hearing on the objections was held before the referee in bankruptcy September 29, 1941. Th bankrupt testified. Some forty pages of testimony were taken. Various exhibits were received in evidence. The bankrupt's then attorney was prepared on both specifications and had a trial brief discussing the legal principles applicable to a determination of each specification. The referee decided the issues at the end of the hearing. The bankrupt seeks a review of the order of the referee, dated October 7, 1941, which sustained the first specification filed by the objecting creditor and denied the bankrupt a discharge. The referee's order dismissed the second specification and the objecting creditor seeks a review of that part of the order.

The bankrupt, through new counsel, has brought on a motion seeking a new trial of the issues so that he may introduce certain evidence which will be hereinafter discussed.

I am of the opinion that both petitions to review the referee's order of October 7, 1941 should be dismissed, that the said order should be affirmed, and that the bankrupt's motion for a new trial should be denied.

The stenographer's minutes show that the bankrupt not only kept insufficient records from which his financial condition could be ascertained but actually destroyed such records as he at one time had for the years 1939, 1940 and even for the first four months of 1941, just prior to the filing of his petition in bankruptcy. The bankrupt was an independent sales representative

for four or five companies, travelling extensively and earning gross commissions of $14,469.46 in 1939, $16,075 in 1940 and $5,013.90 in the first four months of 1941. For certain manufacturers the bankrupt had exclusive territory and employed one Gladstone to sell their products in certain towns and cities for which the bankrupt paid Gladstone a commission of 5%.

The bankrupt's income tax returns showed gross sums for travelling expenses as high as $8,987 for the year 1940 and $7415 for 1939, but he could give no details and had no records relating thereto. For the first four months of 1941, according to a statement (Ex. 3) the bankrupt filed with the referee September 11, 1941, his earnings were $5,013.90 and his expenses totalled $7,044.21. Where he got the extra money to pay out $2,000 more than he earned is unexplained. Some of these expenses are for his home ($520), his mother ($1295) and attorneys ($755). Included in the list were travelling expenses of $2,250, not itemized. The bankrupt testified he had slips of paper showing the various hotel expenditures and so forth, but when his Federal income tax cases were closed for those years he destroyed these slips. He said, "Once a case is closed I forget about the case": One would expect a sales representative, whose gross income from four or five companies was about $15,000 a year, would keep a checking account. He was paid by check. He traveled ten months of the year. He claims that the only way he knew how much he spent in January 1941 was that he would start out weekly with so much money and spend it. For the first four months of 1941 he did not even have the "slips of paper showing the various hotel expenditures and so forth" which he said he had had for the years 1939 and 1940 for tax cases. Later he testified that he didn't have any such records for 1940, a tax year case which could not very well have been "closed", since the Federal return was not due until March 15, 1941 and the bankruptcy petition was filed April 24, 1941. His 1939 slips he destroyed when he "was called for the Federal for the year 1939". He threw those records away—"When they are finished with the Federal case". He had kept these records in a file at home. The failure of the bankrupt to keep proper records from which his financial condition could be ascertained by his creditors was due to the fact that he had unpaid creditors, one of them the objecting creditor, Mary Harris, who was in fact a judgment creditor. He had been examined in supplementary proceedings in 1938. When he went through bankruptcy in 1933–4 and got a discharge he failed to list certain creditors. As to these he testified—"They have been harassing me since the last bankruptcy". In my opinion this is the reason why the bankrupt failed to keep records from which his financial condition could be ascertained.

■ The bankrupt's transactions were many and substantial. He is not entitled to a discharge without a complete disclosure of his financial affairs. If the keeping of books or records is necessary to make such disclosure possible then the bankrupt has failed to comply with the Act. In re Underhill, 2 Cir., 82 F.2d 258, "After the creditor has shown the absence of any adequate records, the burden falls upon the bankrupt of satisfying the court that his failure to produce them was 'justified' ". White v. Schoenfeld, 2 Cir., 117 F.2d 131, 132. See, also, In re Muss, 2 Cir., 100 F.2d 395, 396. The bankrupt is required to "produce such records as are customarily kept by a person doing the same kind of business," or to "satisfy the bankruptcy court with adequate reasons why he was not in duty bound to keep them". White v. Schoenfeld (supra). In the present case the bankrupt kept some records in 1939 but destroyed them. For 1940 he did not keep even these few records. Indeed from January 1941, when he paid his attorney $200 for services in this then contemplated bankruptcy, down to the filing of the petition on April 24, 1941, he kept no records. Without records the bankrupt could give only general totals of expenses which did not satisfactorily disclose what he had done with his large gross income. In my opinion in the present case there was not only the absence of adequate records, but a dishonest purpose on the part of the bankrupt in failing to keep adequate records. Creditors are not required to show that the bankrupt was dishonest in order to bar a discharge. Ittelman v. Hochman, November 24, 1941, 2 Cir., 123 F.2d 723.

■ The bankrupt's motion for a new trial of the issues on the specifications of

objection to his discharge presents nothing new. Most of the points, which the alleged additional evidence is offered to clarify, are sufficiently clear in the record made before the referee. Some of the "new evidence" would be merely cumulative. The record of the trial before the referee and the brief of the bankrupt's attorney at that trial show that the bankrupt and his attorney knew the issues they were to meet and prepared accordingly. Prior to the hearing the bankrupt's attorney submitted to the referee on September 11, 1941, a statement "of the expenditures and earnings" of the bankrupt for January, February, March and April 1941, and forwarded a copy thereof to the attorneys for the objecting creditor. This was less than three weeks before the trial itself. The bankrupt and his attorney knew that the question of the bankrupt's expenditures and earnings and the records relating thereto would be the subject of inquiry under the first specification.

The bankrupt also seeks to submit testimony of accountants that it is not customary for travelling salesmen to keep any records of their earnings and expenditures. This bankrupt was no ordinary travelling salesman and his gross earnings were about $15,000 a year. Even if accountants were to testify as "experts" as to this alleged custom of travelling salesmen, it would be advisory only and the referee would not be bound by it. The tests as to what kind of records will meet the requirements of the "Bankruptcy Act", 11 U.S.C.A. § 1 et seq., are not formulated by accountants, but by the decisions of our appellate court, which are controlling. The referees in bankruptcy and the District Judges apply those tests to the facts of each case, where the issue of insufficient records is raised. Each case is determined on its own set of facts. On the facts already presented by the admission of the bankrupt, even if supplemented by all the additional evidence which the bankrupt's new attorneys would present on a new trial, the result would not be changed. With all that before me, if called upon to review the expanded record, I would still be of the opinion that the bankrupt should be denied a discharge.

The referee's order of October 7, 1941, is affirmed and the bankrupt's motion for a new trial is denied. Submit orders accordingly.