## In re BECK.

District Court, S. D. New York.

Jan. 19, 1942.

Harris Koppelman, of New York City, for trustee.

Karl Propper, of New York City, for bankrupt.

COXE, District Judge.

This is a petition of a bankruptcy trustee to review a referee's order overruling specifications of objection to a bankrupt's discharge, and granting the discharge.

The specifications of objection were filed by the trustee, and alleged (1) that the bankrupt had, within the twelve months period prior to the filing of the petition, transferred to his wife a parcel of real property at 1849 Loring Place, in the Borough of the Bronx, with intent to defraud his creditors, and (2) that the bankrupt had made a false statement in his "Statement of Affairs" by answering "None" to the Question 10(a): "What property have you transferred or otherwise disposed of during the year immediately preceding the filing of the original petition herein?"

The bankrupt filed a voluntary bankruptcy petition in this district on April 30, 1940, in which he listed liabilities of $2,993.29, and stated that he had no assets. He answered "None" to question 10(a) of the "Statement of Affairs" referred to in the specifications of objection filed by the trustee. He admitted in his testimony that in November, 1939, he took title in his own name to a two-family house at 1849 Loring Place in the Borough of the Bronx; he had about six weeks before that signed a contract to purchase the house, also in his own name, on which he made a down payment of $500. He deeded the property to his wife on December 15, 1939. The schedules show that on this last mentioned date there were unsatisfied judgments against the bankrupt of more than $1,400.

The bankrupt insisted throughout the proceeding that the house was purchased for his wife and with her money, and that title was taken in the bankrupt's name because his wife was sick at the time of the closing. His testimony was that his wife gave him $500 in cash for the down payment, and $1,500 in cash for the final payment; that she obtained the cash for both payments from her mother, who had no bank account; that the $500 down payment was made by a check of the Jay Beck Plumbing Co., Inc., a corporation of which the bankrupt was president; and that the final payment of $1,500 was made in cash. He also said that his wife was sick at the time of the closing, and that title to the house was taken in his name because his wife was unable to be present. The bankrupt's wife testified that before her marriage to the bankrupt she "worked on dresses" and earned $35 a week; that she lived then with her mother, and had savings which her mother kept in cash for her; and that in 1939 her mother gave her "some money and we bought a little house." The record does not show when the marriage took place, but it is clear that it must have been a number of years before 1939, for the bankrupt said that he had two sons "going to school". The wife testified further that she was sick when the bankrupt went to take title to the house, and that after she found out that the title was in his name she asked that it be placed in her name. The mother was not called as a witness in support of the wife's testimony.

I think the story told by the bankrupt and his wife regarding the purchase of the house is incredible. In the first place, it is difficult to believe that the wife would have left such a sum as $2,000 in cash with her mother during the years that elapsed since her marriage. If there had been any substance in the story, why was not the mother called to corroborate her daughter's testimony? In the second place, the reason given by both witnesses for taking title to the house in the name of the bankrupt is palpably unsound; it was not necessary for the wife to be present at the closing in order to have the title to the house placed in her name. Even such a flimsy excuse was not advanced to explain why the contract for the purchase of the property, executed about six weeks previously, was also taken in the name of the bankrupt. Finally, the credibility of the bankrupt was seriously impaired by an affidavit, which he swore to on March 27, 1940, and which he submitted to the state court in opposition to a motion for summary judgment in an action pending against him there. In this affidavit, the bankrupt stated that prior to September 30, 1939, he "bought for his own use and dwelling a two-family house at 1849 Loring Place, Bronx, New York, and the taking of title thereto was pending on September 30, 1939".

The trustee clearly made a sufficient showing to satisfy the court that there were reasonable grounds for believing that the bankrupt had made a transfer of the Loring Place property to his wife within the twelve months period with intent to defraud his creditors. The burden of proving the negative of that issue was, therefore, shifted to the bankrupt under Section 14, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c. See Berley v. Fiol, 124 F.2d 676, decided by the Circuit Court of Appeals for this circuit January 12, 1942. I do not think that the bankrupt in any way carried this burden. I hold, therefore, with respect to the first specification that the findings of the referee are clearly erroneous, and that the first specification should be sustained.

The second specification directed to the answer of the bankrupt to question 10 (a) of the "Statement of Affairs" is also sustained. This necessarily follows from the disposition with respect to the first specification; it also seems to be required even though the first specification were overruled. See Ittelman v. Hochman, 123 F.2d 723, decided by the Circuit Court of Appeals for this circuit November 24, 1941.

The petition to review the order of the referee is sustained, the two specifications of objection filed by the trustee are sustained, and the discharge of the bankrupt is denied.