In re BANK.

No. 29286.

District Court, W. D. New York.

Sept. 7, 1940.

Stephen Goldstein, of Buffalo, N. Y. (Israel Rumizen, of Buffalo, N. Y., of counsel), for bankrupt.

Chester A. Pearlman, of Buffalo, N. Y., for objecting creditor.

KNIGHT, District Judge.

Objection to the bankrupt's discharge was sustained by the referee upon the grounds (1) that bankrupt failed to keep books of account or records from which his financial condition and business transactions might be ascertained and (2) that bankrupt obtained a loan of money upon a false financial statement in writing. Bankrupt now petitions for a review of the decision of the referee.

At the time of the making of the financial statement, bankrupt was indebted to numerous individuals and to several finance companies and banks. The statement upon which the objection was based was given to the Modern Industrial Bank of New York and contained the question "Have you any loans at present with other companies? Answer Yes or No." Bankrupt did not answer as directed. Directly beneath the question was a line below which were the words "Name of Company or Bank amount." Bankrupt there inserted "Morris Plan Manuf. Trust $2000." A question which called for a statement of total assets and liabilities together with net worth was left unanswered. A loan of $750 was made upon the application, a chattel mortgage upon bankrupt's car being taken as security and the signature of a co-maker being required on the note.

■ Bankrupt testifies that his application was rejected upon his first attempt to obtain a loan, but that he finally obtained the loan through the intervention of a friend. His contention that the statement became ineffective upon the rejection cannot be accepted. The matter was followed up almost immediately, and all negotiations must reasonably be considered one transaction.

■ The record indicates that bankrupt had previously borrowed $1,000 from the National Public Bank of New York City, $1,400 from the Morris Plan Industrial Bank and $200 from the Railroad Employees Loan Company. Bankrupt had borrowed additional money from fellow employees who, in order to be able to make the loans, had borrowed upon their own credit from other banks and finance companies. It appears that the loan from Manufacturers Trust Company, which was a loan of this type, had been procured by one Rothwax, with bankrupt signing the note as co-maker. It is clear that bankrupt's statement did not set forth the names of all of the finance companies and banks to which he was indebted. This in itself would not necessarily be material were it shown that he set forth the full amount that was owing to all at the time. The record does not indicate whether the amount stated was the amount due. No attempt was made to determine how much remained due on each loan or all of them together at the time of the giving of the statement in question. Assuming, without deciding, that this was such a statement with respect to financial conditions as is contemplated by Section 14, sub. c(3) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(3), as held in Re Sine, D.C., 25 F.Supp. 800, the falsity of the statement does not appear to have been proved. This objection should be dismissed.

■ Bankrupt kept no books of account or records. He earned about $9,000 per year as a window dresser and buyer in a men's furnishings store. He testifies that more than half of his salary was gambled away in bets upon horse races, and that the schedule of indebtedness amounting to about $13,000 was built up as the result of such losses. No other explanation has been advanced to account for his present financial condition. Ordinarily, a wage earner not buying and selling merchandise will not be required to keep books. However, in a case such as the present, where the bankrupt was earning a substantial salary, was borrowing heavily in addition and offers as an excuse for his losses only that he was losing heavily as the result of gambling, the necessity for adequate records to explain his transactions becomes evident. I see no difference in principle between the horse race gambling of bankrupt and the stock market speculation recited in Re Underhill, 2 Cir., 82 F.2d 258, wherein the bankrupt was denied a discharge for failure to keep proper books and records. See, also, In re Arnold, D.C., 1 F.Supp. 499, 20 A.B.R.,N.S., 426. The same result was reached in Re Northridge D.C., 53 F.2d 858, where bankrupt's earnings, borrowings, losses not satisfactorily explained and scheduled indebtedness were much smaller than those of bankrupt here.

Under the circumstances here disclosed, I can find no justification for bankrupt's failure to keep books of account, and the denial of discharge on such ground is affirmed.