## WHITE v. SCHOENFELD.
### No. 140.

Circuit Court of Appeals, Second Circuit.

Jan. 27, 1941.

Charles Seligson, of New York City (Leonard M. Amsterdam and Bernard Bayer, both of New York City, on the brief), for appellant.

Samuel Masia and Archibald Palmer, both of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

PER CURIAM.

This is an appeal from an order in bankruptcy, confirming the report of a referee, as special master, which denied the bank-

rupt's discharge. The specifications, filed on May 25, 1937, were first, that the bankrupt had committed three crimes forbidden by the statute: (a) falsely stating in his schedules that he had no books, deeds or papers; (b) concealing or destroying such documents; (c) withholding them after petition filed; and second, that he had "destroyed, concealed or failed to keep books and records from which his financial condition and business transactions might be ascertained." The referee found against him on both specifications, and the judge confirmed his report as a whole. It will be necessary, however, for us to consider only the second specification.

The bankrupt scheduled over $230,000 of liabilities and no assets. Substantially all these liabilities had arisen from guaranteeing the debts of corporations in which he was interested, of which the most important was the Artistic Wire Forming Company. He owned all the shares of this company and through it he conducted an active business which gave him a substantial income until 1931, when the bankruptcy of one of its large debtors put it in serious straits. It then became necessary for the company to borrow largely, and in order to do so the lenders required him to guarantee the loans, and in one instance to pledge all his shares in the company as well. With the help of the proceeds of these the company continued in business till June, 1936, when it finally collapsed and went into bankruptcy, followed in January, 1937, by the bankrupt. He declared that his transactions with the creditors of this company all appeared upon its books, and that it was because they did that he had kept no separate records of his own. The company's books were in the possession of its receiver, but the bankrupt did not call the receiver, or seek in any other way to produce them. His largest debt was to the lessor of property leased to the Bar Realty Company, in which he was a director and shareholder. The lessor had demanded a guarantee of this lease by all the lessee's officers, and the bankrupt joined with the rest in giving one. His interest in the lessee does not definitely appear even in his testimony, and we have nothing more than that. As to several other companies whose loans he guaranteed, he gave no details whatever. Indeed, he did not produce a scrap of paper concerning any of his liabilities for although his attorney testified that some judgments had been entered against him, he did not produce certified copies even of these.

Congress has shown a disposition towards increasing strictness as to § 14, sub. b(2), 11 U.S.C.A. § 32, sub. b(2) (now § 14, sub. c(2). In the original act it was necessary to prove that the bankrupt's destruction or concealment of adequate records, or his failure to keep them, was with "fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy." The amendment of 1903 eliminated the adjective, "fraudulent" (which scarcely made any difference) and struck out the phrase, "in contemplation of bankruptcy." So the section stood until 1926 when it took its present form: "from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case." 44 Stat. 663. Since Nix v. Sternberg, 8 Cir., 38 F.2d 611, it has been uniformly held that, after the creditor has shown the absence of any adequate records, the burden falls upon the bankrupt of satisfying the court that his failure to produce them was "justified." Karger v. Sandler, 2 Cir., 62 F.2d 80; In re Underhill, 2 Cir., 82 F.2d 258; Koufman v. Sheinwald, 1 Cir., 83 F.2d 977; Rosenberg v. Bloom, 9 Cir., 99 F.2d 249; Hedges v. Bushnell, 10 Cir., 106 F.2d 979. What will justify that failure depends largely upon how extensive and complicated the bankrupt's business is—a cobbler will succeed with much less than a manufacturer—but the important change is that since 1926 no moral obliquity need be shown. Honesty is not enough; the law demands as the condition of a discharge either that the bankrupt shall produce such records as are customarily kept by a person doing the same kind of business, or that he shall satisfy the bankruptcy court with adequate reasons why he was not in duty bound to keep them.

In the case at bar the creditor proved the complete absence of any records, and it necessarily followed that the bankrupt had either destroyed them, was concealing them, or had never kept any. He did not carry the burden which this proof imposed upon him, at least we cannot properly say that the referee's finding that he did not was "clearly erroneous." Perhaps it was true that the wire company's records would have showed his transactions just as he said they would; that is, that the proceeds of the greater part of his scheduled liabilities went to that company. But those books were not his books and the excuse, if it was an excuse, was for him to

make good, the proof being easily available if he was right. As to the Bar Realty Company also, the guarantee must have been in writing and prima facie it was available; and similarly as to the other companies whose debts he guaranteed. He did nothing but give the vaguest oral testimony as to all these transactions and the referee who saw him did not credit him. We cannot see why his word was necessarily conclusive in the absence of confirmation; and, while we need not go so far as to agree that he had actually destroyed his records, there was ample evidence showing that he was in no position to demand a discharge.

Order affirmed.