has no obligation to defend such action or to indemnify the defendant Segreto against any liability or loss.

## In re BIRO.
### No. B33308.

District Court, E. D. New York.
March 5, 1941.

Samuel O. Kuflik, of New York City, for bankrupt.

Archibald Palmer, of New York City, for objecting creditor.

Henry C. Frey, of Jamaica, N. Y., referee in bankruptcy.

GALSTON, District Judge.

The referee denied the application of the bankrupt for a discharge on the ground that the bankrupt failed to keep and preserve books of account or records from which his financial condition could be determined.

At the time of filing of the petition in bankruptcy the bankrupt was indebted to Henrietta Bethel in the sum of $100,000, $40,000 having been received by him from her in 1930, and $60,000 in 1931. It appears from the cablegram in evidence that the money was turned over to him for trading purposes at the discretion of the bankrupt, with some stipulation about a monthly profit at the rate of $1,000 per month beginning August 8, 1931. These transactions he said he entered in his books, asserting that he had kept a regular set of books. He had been engaged in the business of selling securities. He testified that his books had been placed in an office in Exchange Place and that he had lost them in 1933. Somewhat later he said that when he was dispossessed in 1934 he left the books in the office building at Exchange Place, either in 1934 or the first part of 1935.

During the year 1931 he said he lost $54,000. Without the production of the books it is impossible to determine what his transactions really were, how he used the $100,000 which he obtained from Henrietta Bethel, and what payments, beyond checks for relatively small amounts, he made to her. It seems obvious that the business of the bankrupt was such as to require him to keep records from which his financial transactions could be ascertained and to preserve those records. His transactions were considerable. His income tax returns for the year 1931 show receipts in the business of trading in stocks and bonds of $326,205.42. He had many oil royalties. He had investments in natural gas and in gas leases, and had also invested in the preferred stock of a certain restaurant.

The petition in bankruptcy was filed in 1937. Assuming that the books were really lost (the referee having observed the witness on the stand is reluctant to accept the explanation) there was not a showing of other records from which his financial transactions could be ascertained, such as check books, vouchers, miscellaneous data. Brokers engaged in finance should keep records and preserve them. The bankrupt in 1933 and 1934 must have appreciated that his obligations to existing creditors, particularly to the objecting creditor herein, were such as to require him to hold on to his records. Matters of this kind have frequently been before the courts. The bankrupt has failed to meet the test of Karger v. Sandler, 2 Cir., 62 F. 2d 80; In re Northridge, D.C., 53 F.2d 858; In re Krulewitch, D.C., 60 F.2d 1039; and White v. Jacob Schoenfeld, 117 F.2d 131, decided by the Circuit Court of Ap-

peals for the Second Circuit on January 27, 1941, not yet officially reported, which hold that after the creditors have shown the absence of any adequate records the burden falls upon the bankrupt to satisfy the court that its failure to produce them was justified. The referee doubted the credibility of the bankrupt and refused to accept his explanation of the lost books. This finding is entitled to great weight. M. & M. Mfg. Co., Inc., 2 Cir., 71 F.2d 140. The motion to confirm the report of the referee is granted.