MARTIN J. BAMMAN, Appellant, *v.* FRANK ERICKSON, Respondent.

Argued March 16, 1942; decided April 23, 1942.

*William T. Gallagher* and *William D. Cunningham* for appellant. The remedy of section 994 of the Penal Law is available as a matter of law. The court erred in charging that it depended upon the continuity and extent of the transactions. (*People ex rel. Collins* v. *McLaughlin*, 128 App. Div. 599; *People ex rel. Sterling* v. *Sheriff*, 60 Misc. Rep. 326; *People* v. *Stedeker*, 175 N. Y. 57.)

*Martin W. Littleton* and *Solomon Goodman*, for respondent. The remedy prescribed by section 994 of the Penal Law is available only to casual bettors. (*Dupper* v. *Rogan*, 254 App. Div. 747; *Watts* v. *Malatesta*, 262 N. Y. 80; *People* v. *Bright*, 203 N. Y. 73.)

LEHMAN, Ch. J. The plaintiff brought an action as assignee of John W. Austin to recover almost two hundred thousand dollars which, it is alleged, Austin paid to the defendant as " wagers " upon horse races. At the trial it was conceded that the defendant is " a professional gambler engaged in bookmaking and accepting wagers upon the outcome of horse racing and other events." He " operated through various employees located at various offices * * * or other places for the transaction of such business maintained by the defendant within the city of New York." It was also conceded " that the said Austin made certain bets and wagers directly and indirectly with the defendant." Austin produced at the trial checks and money orders in the sum of $17,879.90, which were endorsed by the defendant and which, the defendant did not dispute, were paid upon wagers Austin had previously placed with the defendant and had lost. Austin produced other evidence to show that he had made, in addition, much larger payments to the defendant.

"All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful." (Penal Law, § 991.) The winner of a wager cannot recover the amount of the wager from a loser who chooses to welch. (Penal Law, §§ 991, 992, 993.) The loser may recover from the winner any voluntary payments he has made. (Penal Law, § 994.)

That section provides: "Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet prohibited, may sue for and recover the same of the winner or person to whom the same shall be paid or delivered * * *." Though the plaintiff has proven conclusively that his assignor has paid large sums to a professional bookmaker upon prohibited wagers made with the bookmaker, yet recovery has been denied to the plaintiff on the ground that the statute was intended to permit recovery of moneys paid upon bets or wagers only by "casual bettors" and the jury has found that the plaintiff was not a "casual bettor."

If a bettor who is a steady customer of professional gamblers, who resorts to pool rooms day after day, to whom gambling has become a passion so irresistible that he will even steal to obtain the money to wager; who admits that he is an "habitual" bettor — if such a man has no right under the statute to recover the moneys he has paid upon wagers placed with a professional gambler in pool rooms and other places maintained for the transaction of an organized and systematic business of bookmaking and accepting wagers, then Austin had no cause of action which he could assign to this plaintiff. Those facts are established conclusively but other facts, too, must be considered. Austin was a graduate of the college and the law school of a great university and the junior member of an old and respected firm of lawyers. The evidence shows that he was steadily engaged in the practice of law, was at his office on "practically every business day when not prevented by illness" and that he handled the legal matters "in which he was retained by clients or which were assigned to him by the firm." He maintained no place for the transaction of an organized and systematic business of gambling. He "did not engage in pool-selling, bookmaking, nor as stakeholder in connection with any

horse racing events, or other form of gambling." In brief, though he gambled habitually, though he visited pool rooms almost daily, though, at " a pool room, office or other place of business maintained by defendant Erickson," he paid upon bets or wagers large sums of money not belonging to him, he did not gamble or conduct a gambling business in manner which would subject him to criminal prosecution under any provision of the Penal Law.

The provisions of the Penal Law are intended to discourage and repress gambling in all its forms. Wagering and betting are prohibited but the penalty visited upon a person who practices " the profession of a common gambler," who conducts a systematic, organized business of pool-selling, bookmaking or accepting bets from others is very different from the penalty visited upon the bettor who stakes his money upon a chance. The professional gambler is guilty of a crime; his customer performs an act which the Constitution and statute have stigmatized as vicious and have declared unlawful, but the law draws a distinction between a criminal act and yielding to a vice. (*People* v. *Stedeker*, 175 N. Y. 57; *Watts* v. *Malatesta*, 262 N. Y. 80.) It does not treat alike the spider who spins the web and the fly enmeshed in it.

In this case the trial judge charged that only a " casual bettor " may recover his losses from a professional gambler under the provisions of section 994 of the Penal Law and that if the plaintiff's assignor made bets and wagers with such frequency and regularity that they " take him out of the class of a casual better and place him in the professional class, *in pari delicto* with the defendant," then the plaintiff cannot recover. Nothing in the statute nor in any opinion or decision of this court construing the statute supports the rule stated in the charge. This court has pointed out that in order to discourage betting the Penal Law, which prohibits betting, makes " recovery by a winner impossible upon default by the loser (Penal Law, §§ 991 and 992)," and the same statute compels the " return to the loser of voluntary payments made by him (Penal Law, §§ 994 and 995)." If recovery of gain from the illicit transaction is sought those " *in pari delicto* " are denied access to the court; but under the statute the court is open to a loser who seeks to compel the return of the winner's ill gotten gains, though voluntarily paid and though both winner and loser are *in pari delicto*.

(*Watts* v. *Malatesta, supra,* p. 82.) Only where a professional gambler who has committed a crime asserts a right under the statute against a customer who has committed no crime, does doubt about the scope and application of the statute arise. Such a question was presented in the *Watts* case and there the court decided that even though in section 994 the Legislature had, in terms, decreed that " *Any* person who shall pay * * * any money * * * upon the event of *any* wager or bet prohibited, may sue for and recover the same of the winner," yet a professional bookmaker who is guilty of a crime may not recover money paid to a customer who is guilty of an act which is unlawful but which is not criminal. The court, with the concurrence of a majority of the judges, went even further and held that it followed logically that the professional gambler may not even offset moneys paid to a customer upon bets, where the customer was the winner, against moneys paid by the customer upon bets where the professional gambler was the winner. Upon that point there was division of opinion in the court; there was no division that under the statute the customer who has committed no crime may recover, under the statute, moneys paid to a professional gambler who has committed a crime.

There is no suggestion in the opinion that a customer who is an inveterate, regular bettor, the weak victim of the gambling passion or habit, commits a crime or that the defense that the parties are *in pari delicto* may be interposed in an action brought under the provisions of section 994. The professional gambler was denied right to recover or to offset his losses against his gains, as the court pointed out, because " in the eye of the law the professional gambler and his customer do *not* stand on the same plane. They are *not in pari delicto.*" The law offers means of defense to the helpless fly, however foolish — it will not extend its aid to the designing spider.

In the majority opinion the " fly " is, it is true, referred to as a " casual bettor." That might, in other context, mean an individual who bets only occasionally and at irregular times in distinction from an individual who bets habitually and regularly. The opinion makes clear that is not the distinction the court intended. The person described as a " casual bettor " is an individual who has not been guilty of " betting and gambling organized

and carried on as a systematic business," in manner which the law " makes criminal." After pointing out that distinction the court said " curb the professional with his constant offer of temptation coupled with ready opportunity, and you have to a large extent controlled the evil." The law does not deny recovery to the constant object of the " constant offer of temptation."

The judgments should be reversed and a new trial granted, with costs to appellant to abide the event.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.