## KLEIN v. MORRIS PLAN INDUSTRIAL BANK OF NEW YORK.

### No. 65.

Circuit Court of Appeals, Second Circuit.

Nov. 4, 1942.

Jacob D. Fuchsberg, of New York City (Cohen & Fuchsberg, of New York City, on the brief), for bankrupt-appellant.

Henry W. Parker, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The question presented on this appeal is whether the referee and the district court committed error in denying a discharge to the bankrupt for failure to keep books showing the extensive gambling transactions which led to his bankruptcy. In his original petition the bankrupt stated that the sum of $15,000 had been lost by him as a result of gambling during the previous year, but that "particulars and dates cannot be given since the gambling was daily and involved thousands of transactions." In 1933, he received his discharge in a bankruptcy due to the same cause. The present proceedings were begun just beyond the six-year period necessary under Bankruptcy Act § 14, sub. c(5), 11 U.S.C.A. § 32, sub. c(5), to make him again eligible for a discharge.

The bankrupt was employed at a salary of $150 a week as a window dresser by a retail clothing firm. He testified that he had too much spare time on his hands and hence engaged in all sorts of gambling, on horse races, baseball, hockey, fights, and so on. He first denied any record of these transactions, but later produced a little book which contained the entry, "Year Ending 1940 Losses $8340," and then continued with daily entries of amounts "Won" or "Lost" from January 1, 1941, to September 10, 1941. No identification of these transactions, beyond dates and amounts, was provided. Of the thirty-six weeks covered, twenty-six showed net losses aggregating $8,568, while ten showed net winnings of $2,146, leaving a net loss for the period of $6,422. The bankrupt also produced a large number of checks drawn by him, but these were personal checks for which he received the cash he used in gambling. Notwithstanding the extent of these transactions had with various bookmakers, he testified that he did not know or recall their names, addresses, or even telephone numbers, though much of his betting was done by telephone calls to "bookies." His liabilities, in excess of $8,000, consisted in large part of loans from banks or friends, which, he testified, he procured in order to continue his gambling. He is married and has two minor children.

■■ Under N.Y. Penal Law, § 994, the loser of any wager or bet may recover from the winner all payments he has made. This has been construed to authorize recovery of such losses by all except professional bookmakers and gamblers. Watts v. Malatesta, 262 N.Y. 80, 186 N.E. 210, 88 A.L.R. 1072; Bamman v. Erickson, 288 N.Y. 133, 41 N.E.2d 920, 141 A.L.R. 938. Exceptions for betting at a licensed race track in a pari-mutuel machine, McK.N.Y. Unconsolidated Laws, § 7562, Laws 1940, c. 254, § 2, and limitations, as in the case of losses at cards, for which suit must be brought within three months, N.Y. Penal Law, § 995, are, on the bankrupt's own testimony, of negligible importance here. Clearly the bankrupt himself could have sued to recover the substantial part of his losses, and such right would pass to his trustee in bankruptcy. But the records produced by the bankrupt did not provide information to afford a basis for such suits or even to show convincingly—in the light of his other testimony—that such extraordinary losses had occurred.

■ Under the provision of the Bankruptcy Act here involved, discharge may be refused if the bankrupt has failed to keep or preserve records, "from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case." § 14, sub. c(2), 11 U.S.C.A. § 32, sub. c(2). As we have said: "That is no doubt a very loose test, but no looser than some others," such as the standard of care in the law of torts. "The vague, but imperative, dictates of ordinary fair dealing, or common caution, are taken to supply any inability to tell in advance just what the law will exact." Karger v. Sandler, 2 Cir., 62 F.2d 80, 81. The test has usually been considered to be a practical one as to what can be expected of the type of person and the type of business involved. White v. Schoenfeld, 2 Cir., 117 F.2d 131, 132. In Re Underhill, 2 Cir., 82 F.2d 258, 260, where the bankrupt was denied a discharge for failure to keep proper books showing, inter alia, losses due to stock speculations, it was said to be intended "that there be available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." See, also, In re Herzog, 2 Cir., 121 F.2d 581, certiorari denied Herzog v. Dorman, 315 U.S. 807, 62 S.Ct. 640, 86 L.Ed. 1206, where a discharge was denied partners whose auditor had kept for them only books which failed to distinguish partnership transactions from those of a corporation in which they were interested.

Here the bankrupt, contending that he should be required only to keep such records as would ordinarily be kept by a wage earner, says that such a person would not keep a record of gambling losses. Of course, ordinary commercial habits, if known, should have a bearing upon the decision to be made here; but whether they may be made a controlling test is more doubtful. In an article, "Some Functional Aspects of Bankruptcy," 41 Yale L.J. 329, Professor, now Mr. Justice, Douglas has pointed out that only a small proportion—about 25% in fact—of the bankrupts studied by him showed books at all adequate, a percentage less than of those who kept no books at all. He also noted the considerable number of cases where speculation and gambling were present—between 5 and 6% —and suggested that under the explicit provisions of the English Bankruptcy Act, probably few of these bankrupts would have been granted an unconditional discharge. Further studies reported by Miss Corstvet, "Inadequate Bookkeeping as a Factor in Business Failure," 45 Yale L.J. 1201, developed the fact that, while inadequate records were more often found in failed than in going businesses, yet even with the latter there was a dearth of adequate bookkeeping except in the larger businesses. Both articles intimate that the courts have done less than they should in trying to enforce some standards, at least, of adequate bookkeeping. A standard set, therefore, by the lower, or perhaps even the average, group of small commercial failures would probably essentially nullify the provisions of the statute. At least it would be below that stated in terms by the cases, as cited above.

■ At any rate, we can hardly take judicial notice of what the practice is among habitual gamblers as to keeping records of their losses. The New York cases cited above, as well as other cases which have enforced the statute here involved, show that at least a considerable number of sufficient records have been kept so that very substantial recoveries have been made under the statute. This bankrupt himself recognized the necessity of some records, since he has produced memoranda purporting to show the amount of his gains and losses. Nevertheless, the existence of these memoranda, coupled with his incredible failure of memory as to those with whom he had dealt so extensively, suggests a purpose more to provide an excuse for his bankruptcy than to give information of value to his creditors or his trustee. It does not seem sufficient to suggest that his loss of memory was occasioned by unwillingness to "welch" on his professional friends. We cannot enforce gambling niceties here; we are limited to deciding whether under the circumstances the referee could hold unjustified the failure of the bankrupt to keep any records from which his financial condition and business transactions might be ascertained.

■ Here the referee held in effect that a prima facie case for denial of the discharge had been made out, and that the bankrupt had not sustained the burden then cast upon him to explain his failure to keep records. 11 U.S.C.A. § 32, sub. c; White v. Schoenfeld, supra. The district court could "see no reason to set aside the Referee's decision herein." Nor can we. The statute obviously intends an extensive discretion in the trier of facts; and under General Order No. 47, his findings must be accepted unless clearly erroneous. Of course, a discharge ought not to be denied in every case of failure to record an occasional gambling loss. But when gambling is a major affair of the bankrupt's life, causing his two successive bankruptcies and involving daily transactions of immense sums, and when, moreover, such memoranda as are preserved tend rather to cover up than to explain the claimed transactions, findings against the bankrupt seem eminently reasonable.

■ The objecting creditor relies upon In re Bank, D.C.W.D.N.Y., 34 F.Supp. 706, as authority for denial of the discharge under these circumstances, while the bankrupt relies upon In re Wilde, D.C.S.D.N. Y., July 9, 1942, 48 F.Supp. 230, 50 A.B.R., N.S., 252, for its grant. It should be noted, however, that in each of these cases the district court affirmed the referee's action, and in so doing both emphasized the particular circumstances involved and held the findings justified on the facts, rather than as a matter of law. We think that is the proper course. Since under all the circumstances here disclosed the findings and ruling below seem not unreasonable or clearly erroneous, we affirm the order denying the discharge.

■ The creditor herein filed another ground of objection to the discharge, upon which the referee postponed hearing and decision to the event that his present order might be reversed on review. Such strategy of retreat to perhaps higher terrain under the assaults of the reviewing courts

seems to us undesirable; potentially it puts the parties to the delay and expense of successive appeals.

Affirmed.

L. HAND, Circuit Judge (dissenting).

When a man gambles, either with professionals or with friends, he implies that they shall keep their winnings, as he will keep his; and if at the same time he is making ready to retake his losses while he keeps his gains, he is a cheat, and to my thinking a peculiarly despicable cheat. I doubt if any such exist, though it is true that, later under the sting of defeat, some have been found base enough to bring suit. Even that is less odious than to prepare a fraud from the start. Professional gamblers may be caput lupinum, but that does not "justify" the wretch who swindles them, or the traps he may lay. I think that the order should be reversed and the bankrupt discharged.