930

**In re SLOCUM.**

No. 49036.

United States District Court
E. D. New York.

Oct. 26, 1951.

Harold E. Jacobsen, New York City, for objecting creditor, Reconstruction Finance Corp.

Francis X. Sperl, Flushing, N.Y., for bankrupt.

BYERS, District Judge.

This is a petition to review the decision of a Referee granting a discharge to a bankrupt who was the endorser upon the note of a corporation of which he owned substantially all of the stock. A loan was sought from the First National Bank of Merrick, L. I., N. Y., and as a condition of its grant the individual endorsement by the bankrupt was required; before the loan was approved in that form, the individual submitted a financial statement which

the Referee finds to have been false; if his opinion is understood, he is of the further view that the bank relied upon the false element in the statement, but since the loan was made to the corporation he says: " * * * the bankrupt received no part of this loan, except such as may have come to him through the ordinary course of business of the corporation in the way of salary."

Again: "The bank at the time the loan was made, made no title searches in connection with any of the properties listed in Mr. Slocum's financial statement, and presumably the bank would have made the loan without the inclusion of this 13 room house in the statement. It would have made a substantial loan without this house, but the amount might have been less."

In his opinion, this item was not a decisive factor, which leads him to believe that the misrepresentation was not made with such "reckless indifference to the consequences of the bankrupt's acts that he should be charged with knowledge of its legal effect."

He says: "I find that the inclusion of Item 3 in Schedule 7 of Objecting Creditor's Exhibit 1 was not a willful and intentional false act."

The foregoing indicates the important aspect of this motion, although there were two specifications, and reference to the second will be made later.

There are no separate findings of fact and conclusions, which is probably to be accounted for by the absence of conflicting testimony touching material matters.

The objection was made by the Reconstruction Finance Corporation, which assumed 60% of the loan made by the bank on or about August 29, 1946.

The loan had been sought by Slocum Industries, Inc., in the sum of $150,000, which was later increased to $160,000, and was arranged as the result of negotiations between the bankrupt, Henry Mills Slocum, and Mr. A. B. Weller who was President of the bank, and was to be secured by mortgages covering chattels and real estate. In connection with the proposed personal endorsement of the corporate note, the bankrupt received from the bank a printed form bearing the number CR. 107, entitled "Statement Form Suggested by Federal Reserve Bank of New York" "Personal"

It constitutes objecting creditor's Exhibit 1, and a portion of the contents bearing the number 7, and the title "Real Estate Owned", is the subject of a typewritten attached memorandum headed "Schedule Seven" on which are listed eight parcels of real estate of which five are improved. Item 3 reads as follows: "13 Room House, plot 150' x 150', Freeport, New York, cost $32,000, fire insurance $52,000, estimated present value $52,000, mortgage none."

The testimony of the bankrupt is that he acquired this property in 1944, deeded it to his wife in 1945, and that it constituted the dwelling in which he and his wife resided. Also it appears that the financial statement was required in order that the loan should be approved at the figure of $160,000, because an earlier statement of the same type ("Bankrupt's Exhibit A for Identification") was deemed not to reflect a sufficient net worth on the part of the bankrupt to induce the bank so to make the loan.

The status of that statement in the record is somewhat obscure since it was not received in evidence, but it is referred to in the decision of the Referee at page 124, in which he contrasts the net worth therein shown of $273,640 with that shown in objecting creditor's Exhibit 1, of $314,554, and reference is made to the fact that when the bank approved a $150,000 loan about July 29, 1946, and Mr. Slocum stated the need of the corporation to lie in the higher sum, the President said that it would be necessary for Mr. Slocum to furnish a personal statement "showing an increase in his net worth of $35,000 to $50,000".

Specification of Objection No. 1 has to do with this subject, and alleges that the bankrupt obtained money on credit by making and publishing a materially false statement in writing respecting his financial condition "in that he listed therein a 13 room house located at Freeport, New York,

932

having an estimated value of $52,000, as an asset, whereas in truth and in fact said house was then owned by Gertrude M. Slocum, his wife; the said bank relied thereon."

From what has been recited, it will be seen that the falsity of the bankrupt's statement is conceded; the only question is whether the Referee has correctly appraised the evidence, which consists in the testimony of the bankrupt, the President of the bank, and Wachsman, the Treasurer of the bankrupt's corporation, concerning the extent to which the bank in fact relied upon the misrepresentation; and whether the latter was indeed unintentional and casual.

The Referee says, for instance, that the statement "was prepared by the Slocum Industries, Inc., typed by a secretary, and given to him (the bankrupt) to sign; that he signed it without study, and did not realize that the 13 room house was included in this schedule. * * * The bankrupt knew that the property, the 13 room house, belonged to his wife at that time, and he believed that Mr. Weller knew that the property had been conveyed to his wife some time in 1945." I find it difficult to substantiate the foregoing in the testimony.

All that the bankrupt said on the subject was (page 101): "I don't recall from a business standpoint ever having any discussion one way or the other (concerning the transfer of title to his wife). Mr. Weller, whom you have mentioned, not only was president of the bank but I have always considered him a friend of mine; and I believe at the time I put the house in Mrs. Slocum's name I mentioned it, but that would have been in a friendly way. * * * and I do believe that at a later date I mentioned but not in a banking matter that I have given the house to Mrs. Slocum. I have never discussed it in the bank in reference to this loan either pro or con, to my knowledge."

Since both the bankrupt's Exhibit A given in January of 1946, and the petitioning creditor's Exhibit 1 given in July of 1946, falsely state the ownership of this considerable item of property to have

been that of the bankrupt, which had not been in his name for a year, neither document can be lightly dismissed. The testimony of Mr. Weller as to the reliance which the bank placed upon the representation appears at several places in the testimony, for instance (34): "Q. Was the fact that Mr. Slocum represented himself to be the owner of that property a cause for approving this loan? A. Part of it, yes." (Page 37): "Q. Well, what would you have done? A. Well, if we had known that Mrs. Slocum owned it, we would probably have asked for her endorsement. That is our customary procedure; but we weren't faced with that fact here."

In reference to the financial showing of the corporation in connection with the loan, the following appears (Page 81): "Q. Is the net worth of a corporation a factor in the loan that is made? A. The net worth is a factor, and in a loan of this kind, which is really proprietorship, the worth of the individual takes on greater significance, you see." (Page 82): "Q. Would that statement (the corporation's) have justified a loan in the sum of $160,000? A. Oh, no. It clearly indicates here the lack of capital necessary for operations of the size that he was conducting." (Page 83, referring to the individual statement): "Q. Were you interested in the cost value or in the present value? A. We are interested in both, naturally, and as I said before, we considered the house to be worth $52,000."

Again (Page 87): "Q. Or to put it the other way, could you have made a $160,000 loan without it? A. Well, frankly, it could have been made, but I doubt that it would have been made. It could have been made. That is within the discretion of the committee. We don't have any rule of thumb."

Obviously it is a matter of conjecture as to whether the loan could have been made or not; the fact is that it was made as the result of reliance upon a statement which was false as to the item of $52,000, and in the opinion presently held, the Referee's view as stated on page 127 "and presumably the bank would have made the loan without the inclusion of

this 13 room house in the statement" is not supported by the evidence and hence is clearly erroneous; nor do I understand that the testimony vindicates the Referee's later expression on the same subject.

■ Since the statement was concededly false, the burden which rested on the bankrupt to show his good faith was not sustained, in this Court's opinion. See In re Haggerty, 2 Cir., 165 F.2d 977; In re Frumkin, 2 Cir., 82 F.2d 290, involving a comparable statement of individual worth.

The Referee also dismisses the second specification, which reads: "(b) he (referring to the bankrupt) also listed in said statement real property located at Newburyport, Massachusetts, and acquired by him in July, 1943, at a cost of $65,000.00, whereas in truth and in fact said real property was acquired by him for the sum of $10,000; that said bank relied thereon."

Reference to that property will be found in the same schedule as that describing the residential property; the entry is as follows: "1. Newburyport, Mass., cost $65,000 July 1943, fire insurance in excess of $75,000, estimated present value $75,000, mortgage $7,200."

As to this, the Referee says: "I find that there has been no testimony or proof to sustain this specification. We are not concerned with the cost as set forth in Schedule 7 of this item, but with the value of this item at the time the loan was made. The bankrupt admitted that the property cost $25,000 but that he had spent about $40,000 for improvements between the time of the purchase of this property and the time the loan was made.

"When he was shown his personal income tax return for 1946, he explained that Schedule F set forth therein 'brick and frame plant acquired in 1943, at a cost of $10,000', because that part of the factory site and building could be depreciated, and that part of it was estimated to cost $10,000. Mr. Wachsman testified that he knew that the plant cost $25,000.

"I, therefore, find and decide that the specifications have not been sustained, and the bankrupt is entitled to his discharge."

It will be seen that the representation in terms was as to the cost of this property in 1943, which is shown to have been false, and also as to its present value.

There was no false statement as to the actual ownership, and the evidence as to value in 1946 is meager. The bank received information from its auditor, who incidentally was also the auditor of the bankrupt. As to that, the testimony is (p.53): "I recall he (auditor) was very favorably impressed with the property."

The discrepancy as to the cost is shown at page 115 in Wachsman's testimony: "Q. Do you know how much it cost in 1943? A. * * * $25,000. I recall that, yes."

■ Since, as the Referee truly observes, the important matter was the 1946 value, the bearing of the cost factor upon the action of the bank in relying upon Slocum's endorsement of his corporation's note, called for more cogent evidence than the record discloses I should not feel at liberty to rule adversely to the Referee as to this specification. The evidence in that connection may be consulted profitably, however, for such light as it may throw upon the bankrupt's willingness to incorporate an element in his financial statement as a whole, which he must have known to be contrary to the fact, and the result is not favorable to him.

■ The bankrupt relies upon the presumption of correctness that attaches to the Referee's decision, according to General Order 47, as construed in Klein v. Morris Plan Industrial Bank of New York, 2 Cir., 132 F.2d 809, 144 A.L.R. 1278, and Thompson v. Eck, 2 Cir., 149 F.2d 631, and Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975. If the foregoing go so far as to say that this Court is relieved of the duty of reading the evidence, and then appraising it, I have not correctly understood the order or the opinions; if they say that mere reading is sufficient, and agreement with the Referee's decision must be automatic, there has been an equally infirm insight brought to bear.

■ In the view presently held, the participation of the Reconstruction Finance

Corporation in this considerable loan points to a special duty which rested upon the bank and a special responsibility toward it to be truthful, beyond that which would govern its handling of its own funds—this is shown at pages 71 and 72 of the record—to inquire diligently into all matters relating to the proposed loan, with the understanding that the correct functioning of an agency of government would somewhat be influenced thereby. If that is so, a misrepresentation, a false statement, would take on an added significance which might not attach solely to a bank loan arranged by Mr. Slocum with his friend, Mr. Weller, President of the bank.

In the belief that the decision of the Referee as to the first specification is based upon a failure to take into account all of the evidence contained in the record, and his misinterpretation of part of it, the petition to review is granted, and the decision of the Referee is reversed as to the first specification and the bankrupt's discharge is denied.

Settle order.