**In The Matter of Anthony Philip GEN-
TILE, James Joseph Gentile.**
**Nos. 15773–15774.**

United States District Court
W. D. Kentucky at Louisville.
July 16, 1954.

See also 107 F.Supp. 476.

**724**

D. A. Sachs, Carl K. Helman, Louisville, Ky., for the Bankrupts.

Henry J. Burt, Jr., Louisville, Ky., for Trustee.

SHELBOURNE, Chief Judge.

The Referee in Bankruptcy has certified for review two orders entered by him which will be referred to as Review No. 1 and Review No. 2. Review No. 1 was filed in this Court March 15, 1954, following the entry on January 6, 1954, of an order by the Referee in which Edward L. Mackey, Trustee, was "ordered and directed to forthwith offer for sale the Bankrupt's interest in said real estate, if any there be, or renounce interest therein."

It appears from this order that on April 28, 1953, the Bankrupt made a motion that an order be entered by the Referee directing the Trustee to sell the Bankrupt's interest in real estate listed in Schedule B-1 or renounce interest therein.

It is recited in the order that the real estate listed in the Bankrupt's Schedule B-1 was held by the Bankrupt and his wife jointly with fee in the survivor and that said real estate was encumbered by a mortgage in favor of the Liberty National Bank & Trust Company, Louisville.

The order notes that the Trustee qualified as such on June 5, 1951, and that since his qualification no step had been taken by him to dispose of the real estate or of the Bankrupt's interest therein or to renounce any interest in the real estate for the benefit of the Bankrupt's creditors. It does not appear in the order nor in the Referee's certificate for review that the mortgagee, the Liberty National Bank & Trust Company had sought the aid of the Bankruptcy Court in enforcing its mortgage nor does the order contain any penalty such as removal of the Trustee in the event of his failure "to forthwith offer for sale the Bankrupt's interest in said real estate". There is no direction to the Trustee as to how the Bankrupt's interest in the real estate shall be offered, whether free of lien, or whether the Trustee should petition the Referee for an order of sale.

In the Referee's certificate for review of the order, considerable is said concerning the objections on the part of the Trustee to the Bankrupt's petition for discharge.

Since the Bankrupt's right to discharge is the subject of Review No. 2, referred to above, no further reference is necessary to the objections of the Trustee to the discharge with respect to Review No. 1.

It does appear that the Trustee has sought authority from the Referee to bring a plenary action for the recovery of assets, which the Trustee claims were fraudulently transferred by the Bankrupt, but the Referee's refusal of the Trustee's petition for the plenary action seems to have been proper, because the petition does not disclose to whom the assets were allegedly fraudulently transferred or what assets have been concealed, and for the further reason that the Referee was of opinion that the Bankruptcy Court had full power to grant all of the relief sought by the Trustee within the Bankruptcy Court.

There is considerable criticism of the Trustee by the Referee in the order, all of which may be wholly warranted and justified and it appears to me that the Trustee has been derelict in filing his periodic reports, as required by Section 47 of the Bankruptcy Act, Title 11 U.S. Code Annotated, § 75, sub. a(12).

█ It is therefore concluded that the order entered by the Referee is essentially proper, except that it should have directed the Trustee to petition the Referee for an order of sale and thereby have enabled the Referee to fix the date and terms of sale to the extent and manner of advertising and to determine whether the interest of the Bankrupt would be sold free or subject to any liens and as so modified, the order of the Referee is affirmed and the review is denied.

Review No. 2, involves an order entered by the Referee October 2, 1953, and entered by the Referee following the remand of this case by Judge Shackelford Miller, Jr., of the Circuit Court of Appeals, sitting in this case by designation, remanding the case to the Referee to give the parties an opportunity to introduce evidence and for the Referee to make additional findings of fact and conclusions of law with respect to whether the Bankrupt failed to keep or preserve books of accounts or records from which his financial condition and business transactions might be ascertained for a reasonable time prior to the filing of his petition to be adjudged a Bankrupt.

One of the grounds authorizing refusal of a discharge in bankruptcy is provided by Section 14, sub. c of the Bankruptcy Act, Title 11, U. S. Code Annotated, § 32 sub. c.

The Referee's certificate on review was filed in this Court May 27, 1954. It appears from the record that on October 2, 1953, pursuant to Judge Miller's order, there was filed at a hearing before the Referee such books as the Bankrupts had kept, described by the Referee as the book called "Single Entry Ledger", supposed to contain accounts for 1950, and the book called "Day Book", supposed to contain accounts for 1951.

The bank statements and cancelled checks for the period 1950 to May 1951, were filed in an envelope containing checks of Anthony Gentile; that the records did not reveal the names of the persons, the dates, and the amount of money, if any, that was lost by either of these Gentiles in gambling in which they engaged, and that they conducted themselves not as bookmakers, "and that there was no way to tell from the records anything about who lost or who won, or the amounts lost or won, by any individual."

It appears from the order of the Referee that John M. Nichols, Certified Public Accountant, testified that he was familiar with the books and records kept by ordinary businesses, in compliance with generally recognized methods of bookkeeping and that he had examined the books of the Bankrupts and that they did not appear to be complete and did not show receipt of cash and its disbursements; that the entries in the books representing summary of a number of entries do not show the transactions separately and that in all the books were not sufficient to reflect the Bankrupts' financial condition during the period of time when the business transactions were conducted.

The Referee, however, overruled the objections and held that the Bankrupts Anthony Philip Gentile and James Joseph Gentile were entitled to and were granted discharges as Bankrupts.

Following the entry of this order, the Trustee filed his supplemental petition for a review of the Referee's order of October 2, 1953, reaffirmed his objections to the discharges and asked that the order granting the discharges be vacated and that the discharge to each of the Bankrupts be denied.

In his certificate on review, the Referee says that it is common knowledge that no effort is made by chain drug and grocery stores, five and ten cent stores and limited price department stores and other stores doing business on

a cash basis to secure or record the names of the purchasers or the articles or amount purchased by them or the amounts purchased from such stores and that in the light of the policy of the Bankrupt Law that the right to discharge should be liberally construed, and concludes that the only complaint of the objecting creditors is that the records of the Bankrupts do not disclose the names of the persons gambling with the Bankrupts and the amount of money lost by them in so doing. Therefore, this case is now before the Court squarely upon the question of whether the records kept by the Bankrupts met the statutory requirements.

However, it should be noted that there was no evidence introduced before the Referee as to the mode or system by which the books and records of the five and ten cent stores and general stores are kept and there was also a dearth of evidence with respect to the custom and method of keeping books and records in connection with the operation of a handbook.

Section 14, sub. c (2) of the Bankruptcy Act, being Section 32, sub. c (2) Title 11 U.S.C.A. provides in part—

"The court shall grant the discharge unless satisfied that the bankrupt has * * * or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case; * * * Provided, That if, upon the hearing of an objection to the discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

It will be observed that the statute does not require the existence of any fraudulent intent on the part of the Bankrupt in order to defeat his application for a discharge. Regardless of his honesty, the law requires as a condition precedent to discharge that he shall produce certain records or give adequate reasons for his failure to do so. White v. Schoenfeld, 2 Cir., 117 F.2d 131; International Shoe Co. v. Levine, 5 Cir., 68 F.2d 517. It is a question in each instance of what is reasonable under the particular circumstances of the case and what could be expected generally of persons engaged in that particular type of business. In re Underhill, 2 Cir., 82 F. 2d 258.

Failure to keep adequate records has been held excusable and not a bar to discharge of a traveling man on a small salary. Stanley's Incorporated Store v. Neiderheiser, 8 Cir., 45 F.2d 489; a traveling salesman. Baily v. Ballance, 4 Cir., 123 F.2d 352; an itinerant peddler of rags. Morris Plan Industrial Bank of New York v. Dreher, 2 Cir., 144 F.2d 60; furniture salesman on salary, obviously living beyond his income. Roberts v. W. P. Ford & Son, 4 Cir., 169 F.2d 151; inexperienced young man buying and selling drug store merchandise. In re Newman, 6 Cir., 126 F.2d 336.

On the other hand, the Court in In re Underhill, supra, denied a discharge to a bankrupt who had traded extensively in the stock market, but produced only some income tax reports, monthly brokerage statements, check books and cancelled checks, which the Court held did not comprise a substantially accurate and complete record of his affairs. The Court said that the purpose and intent of Section 14 of the Bankruptcy Act was to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs; that it was never intended that the Bankrupt should be excused from his indebtedness without showing an honest effort to reflect his entire business; and that there

should be available written evidence from which the present financial condition of the Bankrupt and his business transactions for a reasonable period in the past could be ascertained. See Nix v. Sternberg, 8 Cir., 38 F.2d 611; Marx v. Garner, 7 Cir., 125 F.2d 335; White v. Schoenfeld, supra; In re Northridge, D.C., 53 F.2d 858.

"The test for determining when a bankrupt's books or records entitle him to a discharge in bankruptcy under § 14, sub. c, of the Bankruptcy Act",

said the Court of Appeals for the Ninth Circuit in Burchett v. Myers, 202 F.2d 920, 926,

"is a loose one. * * * There must be books or records from which the bankrupt's financial condition can be determined with a fair degree of accuracy and from which his business transactions can be traced for a reasonable period into the past."

■ A bankrupt is not required to keep books of any particular kind, according to any set mode or system in order to satisfy the requirements of the statute, but the books and records must be sufficient to reflect the Bankrupt's financial condition and business for a reasonable time prior to the date of adjudication. In re La Belle, D.C., 112 F. Supp. 447. A disordered mass of unintelligible papers and records is insufficient. In re Snyder, D.C., 112 F.Supp. 897; Burchett v. Myers, supra.

Tested by the standards of the above cases, this Court is of the opinion that the records produced by the Bankrupts in this case are insufficient to substantially or accurately disclose the business transactions of the Bankrupts for a reasonable period of time prior to their adjudication.

Under the statutory law of Kentucky, the Trustee would have the right to a three-fold recovery for the benefit of creditors against any of the winning customers of the Bankrupts while conducting the horse book. No names of such customers are disclosed by any of the books or records. There is no way to check the accuracy of the losses shown by any of the entries for the particular weeks.

■ In the case of a wage earner or salaried employee, the recording of an occasional gambling loss would probably not be required, as not being in accord with the general custom. But when gambling is the business of the Bankrupt and his major if not sole activity, it should be treated as any other business. The Bankrupts here had an established place of business which had been in operation for a period of years and apparently had a somewhat steady business. They were not salaried employees, but derived their income from the business which necessarily was variable. They were subject to certain overhead expenses, such as rent, taxes, telephone services and equipment usually supplied in that kind of activity.

■ Unless the character of the business engaged in excused them from keeping records, the keeping of records showing the various sources of income and the different types and kinds of disbursements on a daily basis, would be the usual and normal practice and would be a requirement if they sought the protection of the Bankruptcy Act. Klein v. Morris Plan Industrial Bank, 2 Cir., 132 F.2d 809, 144 A.L.R. 1278; In re Bank, D.C., 34 F.Supp. 706; In re Schechter, D.C., 43 F.Supp. 1014, Annotation 144 A.L.R. 1283.

■ The burden rested upon the Bankrupts here to show that the books and records kept were sufficient to meet the statutory requirements. Collier on Bankruptcy, 14 Ed. Section 14.33; Burchett v. Myers, supra; In re Snyder, supra. That burden was not met by the Bankrupts in this case.

■ It therefore appears that the Bankrupts are not entitled to a discharge because of their failure to keep records as required by the Bankruptcy Act. Accordingly, the order of the Ref-

eree granting a discharge to the Bankrupts is vacated. The Bankrupts and each of them are hereby denied a discharge and an order to that effect is this day entered.