**In the Matter of Mahlon H. LEPLEY, Bankrupt.**

**No. 11476.**

United States District Court
W. D. Wisconsin.

April 7, 1964.

984

James C. McKenzie, LaCrosse, Wis., for petitioning creditor.

John Bosshard, Patrick R. Doyle, Bosshard, Sundet & Doyle, LaCrosse, Wis., for bankrupt.

RABINOVITZ, District Judge.

This is a petition to review an order of the Referee in Bankruptcy denying objections to a discharge in bankruptcy in the above-entitled matter in bankruptcy, in which Mahlon H. Lepley filed his petition on August 9, 1962, and was discharged on October 15, 1963, pursuant to order of the Referee in Bankruptcy.

There is much ado in the record concerning the question of whether the creditor, Hinkley & Benrud, filed a timely objection to the discharge. There is voluminous correspondence between the Referee in Bankruptcy, the attorney for the objecting creditor, and the attorney for the bankrupt, which the Court at this time totally disregards, and finds that the creditor did file timely objections to the discharge, on November 29, 1962.

The objections to the discharge were filed under Title 11 United States Code § 32, sub. c(3), which provides as follows:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation; * * * Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

The basis for the objection is that the bankrupt did apply for a loan with the Thorp Finance Company on March 22, 1962, and did make "a statement for the purpose of obtaining a loan or extension of credit", in which he was joined by his wife, Fay B. Lepley.

The bankrupt admitted at the hearing on objections to discharge that he did in his own handwriting write on the statement: "We have no other debts". The statement, prepared by the Thorp Finance Corporation, which is printed, stated: "I understand that in extending credit to me it is relying on my financial condition as shown in this statement made by me."

Two hearings were had in this matter. One was held before a State Court Commissioner on August 6, 1962, under Chapter 273 of the Wisconsin Statutes, commonly designated in Wisconsin as a supplementary hearing after judgment. Somewhere during the proceeding, James C. McKenzie was appointed "Constructive Receiver" for the bankrupt's estate, and apparently in the proceeding before the State Court Commissioner. The Court gathers this information from various documents in which Mr. McKenzie designates himself by the nondescript characterization of "Constructive Receiver".

A further hearing was had before the Referee in Bankruptcy on October 25, 1962, at which time a representative of the Thorp Finance Company, under subpoena, produced the exhibit of the alleged false financial statement above

noted. At that time the bankrupt admitted that he had signed it, and further admitted that the statement, namely, that he had no other debts, was untrue.

The indebtedness to the objecting creditor (and the record is not clear on that question) was incurred by reason of a default judgment entered by the objecting creditor against the bankrupt in excess of ten years prior to the date of the rendering of the alleged false financial statement, namely, on March 22, 1962.

It was strongly urged by counsel for the bankrupt that the objection to the discharge could not be made by the creditor, inasmuch as he was not affected by the alleged false financial statement. The Referee apparently went along with this argument, and stated in his findings the disparity of time between the objecting creditor's claim and the date of the alleged false financial statement.

At the hearing before the Referee in Bankruptcy, after the alleged false financial statement was introduced, no further questions were asked of the representative of the Finance Company. The objecting creditor asserted that he had established a *prima facie* case, and that it was incumbent upon the bankrupt to move forward with any proof indicating that there was no reliance on the statement by the Finance Company.

No one questioned the representative of the Finance Company any further. It would have been a simple matter for the bankrupt to ask the representative of the Finance Company just one question, namely: "Did the Finance Company rely on the statement?" However, the record is devoid of such testimony.

■ The Referee found that "none of the essentials on the record have proven a prima facie case." This is clearly a wrong conclusion, and the Court finds it "clearly erroneous".

In 1926 by an amendment Congress added a proviso, stating: "[T]he objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has" made a materially false statement in writing respecting his financial condition, "then the burden of proving that he has not committed any of such acts shall be upon the bankrupt." 11 U.S.C.A. § 32, sub. c.

In Federal Provision Company v. Ershowsky, 2d Cir., 94 F.2d 574, at page 575, the Court said as follows:

"The amendment of 1926 has revolutionized the procedure and discharge; the bankrupt may no longer remain inert, standing upon the infirmities of the evidence against him; once a *prima facie* case appears, the laboring oar passes to his hands and he must bring the boat to shore."

■ It is clear from a reading of the numerous cases on this subject that the burden of showing that the lender did not rely upon the alleged false financial statement passes to the bankrupt, once the statement is introduced and admitted as false.

■ The bankrupt did not sustain this burden, and offered no testimony whatsoever at any of the hearings relative to the question of reliance.

Another question was raised as to the right of the objecting creditor, who was not a party to the false financial statement, to object to the discharge. The Referee seemed to believe that he had no standing in court.

■ In the Matter of Freeman, Bankrupt, D.C., 131 F.Supp. 437; and in In re Haggerty, 2 Cir., 165 F.2d 977, it was held that creditors other than the defrauded creditor (here the Finance Company) may oppose discharge of bankrupt on the ground of a false financial statement made by bankrupt to the defrauded creditor.

The bankrupt relies upon the case of In re Anderson, decided April 17, 1952, by the Honorable Robert E. Tehan, Chief Judge of the Eastern District of Wisconsin, reported in 104 F.Supp. 599.

This decision is a very learned and scholarly treatise dealing with the legal

aspects of objections to discharge because of a false financial statement. However, the facts as detailed by the court in that case are completely different than the instant case. There the bankrupt categorically testified that he was told to write the statement "I have no other bills", and, further, the evidence was clear that the finance company knew when the bankrupt made the statement that he had many other debts.

No attempt was made in this case to clear up the matter of reliance on the financial statement.

We come now to the next finding by the Referee, namely, that the statute does not apply because the bankrupt was not "engaged in business".

The provision "while engaged in business" was added to Section 14(c) (3) (11 U.S.C. § 32, Chapter 3) by Act of July 12, 1960 (74 Stat. 408).

Remington on Bankruptcy, Sixth Edition, Volume 7, Section 3128.1 (1963 Supplement, p. 16), states as follows:

"The use of false financial statements as a bar to discharge was materially limited by the Act of July 12, 1960 (74 St. 408) which amended Bankr.Act. sec. 14(c) (3) (11 U.S.C. sec. 32(c) (3).

"As amended, the statute provides that a discharge will be denied the bankrupt if he has 'while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation.' The purpose of the amendment is to preclude the use of false financial statements as grounds for denial of discharges to nonbusiness bankrupts, and to permit their use only in the case of business bankrupts.[19a]

"Note 19a. Senate Report No. 1688: 'The committee believes that complete denial of a discharge is too severe a penalty in the case of the individual noncommercial bankrupt. It is also a penalty which experience has shown to be subject to abuse. An unscrupulous lender armed with a false financial statement has a powerful weapon with which to intimidate a debtor into entering into an agreement in which the creditor agrees not to oppose the discharge in return for the debtor's agreement to pay the debt in full after discharge. * * *

" 'Even where the creditor has had no part in the issuance of a false financial statement, the exercise of his right to bar the discharge completely results in a windfall for other creditors who were not even aware of such a statement. Debts which are dischargeable are not discharged solely because one of many debts was induced by a false financial statement. * * *

" 'The situation is somewhat different in the case of a business bankrupt. The businessman is more likely to be aware of the severe consequences to him of issuing a false financial statement. His ordinary business records enable him to produce a more accurate statement than a householder who may have a multitude of small debts and no records. Furthermore, the financial statement issued by a businessman is frequently for the purpose of establishing credit standing in the community. His creditors may never see the financial statement itself. On the other hand, the nonbusiness debtor normally issues his financial statement to a particular creditor as part of his application for credit or for a loan. That creditor already has the protection of nondischargeability under section 17.' "

It is difficult to follow much of the testimony in both of the transcripts. However, the bankrupt, a 78-year-old

man, testified that he works for his wife as a salesman, selling silos and that she operated the LaCrosse Silo Company as a sole proprietress.

At the hearing of August 6, 1962, when the bankrupt was examined adversely by counsel for the objecting creditor, the bankrupt testified that the LaCrosse Silo Company was organized with his wife's money, and he stated: "It is not my money." He further testified that he was the salesman for the company; his wife kept the records of everything; she filed separate income taxes under her name of Fay B. Lepley; that he filed income taxes as a salesman, and worked on a ten per cent commission on gross sales, and received no draw or salary; that he knew nothing about the financial condition of the LaCrosse Silo Company; that he kept no records of sales; that he owns no equipment; that he hired none of the employees; that they were hired by his wife, and their wages were paid by his wife.

In one of his answers he said:

"Answer: The LaCrosse Silo was originally started in 1954, but it was owned by her, because of the fact that money was the money—it was her money that was in it."

The loan from the Finance Company in the sum of about $2,200 was secured by a chattel mortgage on all the equipment of the LaCrosse Silo Company, and the chattel mortgage was signed by both the husband and wife.

There was further evidence developed at the hearing that at one time Mrs. Fay B. Lepley filed a trade name certificate or affidavit with the Register of Deeds of LaCrosse County, designating the name of LaCrosse Silo Company. This is a proceeding under the Wisconsin Statutes that is required where one uses a trade name as a sole owner. The record is unclear as to what happened to the exhibit showing this registration, although it was introduced into evidence.

The bankrupt at all times made an offer to allow the attorney for the objecting creditor to view any income tax returns, either in the hands of his accountant or in the Internal Revenue Service. There are some affidavits in the record, showing that such returns were made available, but neither the originals nor copies of the returns appear in the record.

The bankrupt further testified that all payments for silos were made to the LaCrosse Silo Company, and all bills were paid by his wife. He further testified that he did not file a joint income tax return.

At the hearing before the Referee in Bankruptcy on October 25, 1962, the bankrupt again stated:

"Question: It is your statement that you are not the sole owner and sole proprietor of the LaCrosse Silo Company?

"Answer: I am not. I have no interest in the LaCrosse Silo Company.

"Question: And you have never personally yourself paid any obligations of the LaCrosse Silo Company?

"No."

The objecting creditor elicited the testimony of a Jerome Fries at the same hearing, who testified that he was the bookkeeper for the Franklin Iron Works, Inc., at LaCrosse, Wisconsin, and that he did bill certain invoices to M. H. Lepley, care LaCrosse Silo Company, and that the checks were signed by the bankrupt; and further, that he had no dealings with Mrs. Lepley. This testimony, although tending to show that there may be some concealment concerning the ownership of this business, and that Mr. Lepley might actually be the owner, fronting for his wife, nevertheless it was not conclusive on Mr. Fries' testimony.

The bankrupt has insisted at all times that his wife was the owner of the LaCrosse Silo Company, and that he had no financial interest in same. These facts were not contradicted by the objecting creditor, and stand uncontroverted.

Under the circumstances this Court cannot say that the Referee in

Bankruptcy was clearly erroneous in finding that the bankrupt was not a business man within the terms of the Act, and therefore, even if the statement given was a false financial statement, it did not fall within the prohibitions of the statute.

■ With regard to the remaining question as to destruction and failure to maintain financial records, there was some testimony introduced showing that the bankrupt asserted that he kept no records, inasmuch as he insisted that he did not own the business. There was no evidence introduced showing that any records were destroyed, mutilated or falsified.

The case of Morris Plan Industrial Bank of New York v. Dreher, 2 Cir., 144 F.2d 60, is on point with respect to the question of the failure of the bankrupt to keep records. In the Morris Plan case, the bankrupt was an old itinerant peddler of rags and old clothes, going from door to door to solicit the sale of such discarded articles, and reselling his purchases to second-hand dealers and junk men. He did all his business by cash, and rendered no statements in writing. He had no place of business, and no source of income except the earnings from his business. The court stated at page 61 as follows:

"It is true as the appellee contends that without the keeping of records the bankrupt's creditors are wholly unable to check his testimony as to the amount of his earnings. Nevertheless we can not think that a peddler of rags and old clothes who does only a cash business, involving so many transactions each so trifling in amount, should be held to the need of keeping books. It has been held that if a bankrupt's business is such that books would not ordinarily be kept, a failure to keep them should not bar his discharge. In re Neiderheiser, 8 Cir.,

45 F.2d 489, 490, 73 A.L.R. 1152. See also, In re Weismann, D.C.S.D.N.Y., 1 F.Supp. 723; In re Hatch, D.C.S.D.Me., 43 F.2d 463; Devorkin v. Security Bank & Trust Co., 6 Cir., 243 F. 171, 172; Collier on Bankruptcy (14th ed.), § 14.32. The test in applying this section of the bankruptcy act is a loose test, concerned with the practical problems of what can be expected of the type of person and the type of business involved. Klein v. Morris Plan Industrial Bank, 2 Cir., 132 F. 2d 809, 810, 144 A.L.R. 1278, and cases there cited. In our opinion the bankrupt's failure to keep books under the circumstances disclosed does not justify withholding his discharge."

In In re Pinko, 7 Cir., 94 F.2d 259, the complaint was that the bankrupt failed to keep books. In this case the bankrupt was employed at a small salary as manager of a garage, and the court said at page 261:

"Evidently, the statute requiring such books of account could have no application to the period when he was employed at a salary of $15 per week."

In the instant case the bankrupt does not work during the winter months, and the record discloses that his earnings vary according to the sales he makes.

On the record he could not be construed as being a business man, on whom the duty would rest of keeping books and records.

■ Under the circumstances the Court finds that the Referee in Bankruptcy was not clearly erroneous in finding that it was not incumbent upon the bankrupt to keep books and records; and, further, that there was no testimony of his having destroyed any records.

Under the circumstances the Court affirms the Referee's decision and order dismissing the objections to the discharge of the bankrupt.