## UNITED STATES v. COYLE.

(District Court, N. D. New York. January 24, 1916.)

1. CRIMINAL LAW ☞321—PROCEEDINGS BEFORE GRAND JURY—PRESUMPTIONS.
   In the absence of proof or evidence that improper or illegal evidence was used before the grand jury to secure an indictment, the presumption is that the proceedings before the grand jury were regular in all respects.
   [Ed. Note.—For other cases, see Criminal Law, Dec. Dig. ☞321.]

2. BANKRUPTCY ☞97—EXAMINATION OF BANKRUPT—TIME OF EXAMINATION.
   In involuntary cases, a bankrupt may be examined on oath touching his estate and property, and the disposition thereof by him prior to an adjudication.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 139; Dec. Dig. ☞97.]

3. BANKRUPTCY ☞95—POWERS OF COURTS OF BANKRUPTCY—APPOINTMENT OF SPECIAL MASTER.
   A court of bankruptcy is a court of equity, and as such has power to appoint a special master to take evidence, and these special masters may

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be standing masters in chancery or appointed pro hac vice in particular cases.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 132, 140, 145; Dec. Dig. ☞95.]

4. BANKRUPTCY ☞97—EXAMINATION OF BANKRUPT—AUTHORITY OF SPECIAL MASTER.

A referee in bankruptcy, appointed as special master to examine an alleged bankrupt prior to the adjudication touching his property and his disposition thereof, had full power and authority to administer the oath and conduct the examination.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 139; Dec. Dig. ☞97.]

5. BANKRUPTCY ☞242—STATUTORY PROTECTION—PROSECUTIONS FOR PERJURY.

Bankr. Act July 1, 1898, § 7, cl. 9, c. 541, 30 Stat. 548 (Comp. St. 1913, § 9591), requiring the bankrupt at such times as the court may order to submit to an examination concerning the conducting of his business, etc., but providing that no testimony given by him shall be offered in evidence against him in any criminal proceeding, does not render the bankrupt immune from a prosecution for perjury committed upon such an examination.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 399–401; Dec. Dig. ☞242.]

6. BANKRUPTCY ☞486—PERJURY—NATURE AND CONDITION OF PROCEEDING—NECESSITY OF ISSUE.

Where by order of the bankruptcy court a bankrupt is required to attend before it, or a special master appointed by it, and submit to an examination concerning his property, there is a sufficient issue to support a charge of perjury based on false testimony on such examination.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 904; Dec. Dig. ☞486.]

7. BANKRUPTCY ☞486—PERJURY—ELEMENTS OF OFFENSE—MATERIALITY OF TESTIMONY.

On an examination of an alleged bankrupt concerning his property and the disposition made of it by him, prior to an adjudication, a question asked him as to whether he had by cash, check, or otherwise, transferred, paid, or set over, or in any manner placed in the possession of his wife or son, any money other than that to which he had testified, was clearly pertinent, and his willfully false testimony in answer thereto would support a charge of perjury.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 904; Dec. Dig. ☞486.]

8. BANKRUPTCY ☞494—PERJURY—INDICTMENT—SUFFICIENCY.

A indictment charged that an alleged bankrupt, while being examined before a special master concerning his property, was asked whether he had, by cash, check, or otherwise, transferred, paid, or set over, or in any manner placed in the possession of his wife or son, any money other than that to which he had testified, that he answered in the negative, and that this answer was false and untrue, in that he had paid to his son the sum of $450, as he well knew. *Held,* that the indictment was not bad and insufficient because of its failure to show that the bankrupt's attention was called to the payment of the $450; it not appearing that the parties interested in the examination had any knowledge of such payment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 911; Dec. Dig. ☞494.]

9. BANKRUPTCY ☞494—PERJURY—INDICTMENT—SUFFICIENCY.

The indictment was not defective, because of its failure to show that the money was transferred, set over, or given to the son for the purpose of giving him legal possession or ownership thereof, as the disposition of

the money was material, and there was a transfer, payment, or setting over of the money, or placing of it in the son's possession, if it was transferred to him for the purpose of concealing it from creditors, or having him hold it pending the bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 911; Dec. Dig. ⬥494.]

10. BANKRUPTCY ⬥486—PERJURY—ELEMENTS OF OFFENSE—FALSITY OF TESTIMONY.

If the bankrupt had given his son a check for $450, which had been cashed, he transferred, paid, set over, or in some manner placed the money in the son's possession, and his answer to the question was untrue.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 904; Dec. Dig. ⬥486.]

11. BANKRUPTCY ⬥494—PERJURY—INDICTMENT—SUFFICIENCY.

In determining the sufficiency of the indictment, the words used by the bankrupt in giving his testimony and found in the indictment must be given their ordinary meanings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 911; Dec. Dig. ⬥494.]

Patrick H. Coyle was indicted for perjury committed before George B. Russell, special master in a bankruptcy proceeding. On demurrer to the indictment. Demurrer overruled.

Harry V. Borst, Asst. U. S. Atty., of Amsterdam, N. Y.
D. C. Burke, of Oneida, N. Y., for defendant.

RAY, District Judge. The indictment charges that Patrick H. Coyle, of Oneida, N. Y., on the 15th day of December, 1915, at the city of Oneida, in the Northern district of New York, took an oath before George B. Russell, special master duly appointed by the court in bankruptcy, and then and there acting as such, that he would testify truly in the matter of Patrick H. Coyle, alleged bankrupt. The pendency of the proceeding is alleged, and the fact that the said Russell had authority to administer the oath. The indictment then charges that while being so examined and giving evidence before the said special master in the said proceeding, and in violation of section 125 of the Criminal Code of the United States of America (Act March 4, 1909, c. 321, 25 Stat. 1111 [Comp. St. 1913, § 10295]), said Coyle—

"did willfully and contrary to said oath testify and state to the following question, to wit, 'Have you since October 24, 1915, by cash, check, or otherwise transferred, paid, or set over or in any manner placed in the possession of your wife Mrs. Coyle, or your son, Frederick Coyle, any money whatsoever, except the $150 and the $75?' the answer, 'No sir,' which said answer, testimony and statement of the said defendant Patrick H. Coyle was and is a material one for the purpose of ascertaining the assets of the said Patrick H. Coyle and the disposition of the same, and which said answer, testimony, and statement was false and untrue, in that he, the said defendant, Patrick H. Coyle, theretofore and on the 15th day of November, 1915, paid to his son Frederick J. Coyle the sum of $450, as he, the said defendant Patrick H. Coyle, then and there well knew," etc.

[1] The grounds of the demurrer are that the bankruptcy court had no jurisdiction to grant an order for the examination of Patrick H. Coyle before he was adjudicated a bankrupt; that the court had no jurisdiction to grant an order for his examination touching the mat-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ters regarding which the indictment charges the defendant gave false testimony; the special master was not empowered by law to examine the defendant regarding said matters; there is no provision of law authorizing the appointment of a special master to examine an alleged bankrupt prior to his adjudication; that the matter in regard to which the bankrupt was interrogated was immaterial and foreign to the purpose of the inquiry; that the defendant is granted immunity under section 7, clause 9, of the Bankruptcy Act on account of any testimony he may give upon an examination in bankruptcy; the facts charged in the indictment are insufficient and do not state a crime; and improper and illegal evidence was used before a grand jury to secure the indictment. No proof or evidence has been offered or presentd to the court that either improper or illegal evidence was used before the grand jury to secure the indictment. The presumption is that the proceedings before the grand jury were in all respects regular.

[2-5] It has been decided several times that the bankrupt in involuntary cases may be examined on oath touching his estate and property and the disposition thereof by him prior to his adjudication. It has also been decided many times that the court in bankruptcy is a court of equity and has the powers of a court of equity, and this carries with it the power of appointing a special master to take evidence in aid of the court, and these special masters may be standing masters in chancery or appointed pro hac vice in particular cases. In this case the reference was to one of the referees in bankruptcy as special master, and he had full power and authority to administer the oath and conduct the examination. 3 Remington on Bankruptcy (2d Ed.) sections 2626 and 2821, and cases there cited. The bankrupt was directed to appear and submit to examination and he did so. It was his duty to make truthful answers to questions put to him. If, while under examination and bound to make truthful answers to questions put to him pertinent to the matters under investigation, he had made disclosures showing that he had committed a crime on some prior occasion, he would have been immune, as the evidence given in the bankruptcy proceeding could not be used against him on a prosecution for the commission of that crime. The Bankruptcy Act, however, which requires the bankrupt to submit to an examination, does not permit him to give false testimony regarding his estate or property and its whereabouts or the disposition thereof, and then claim immunity from a prosecution for perjury committed while so testifying. Glickstein v. United States, 222 U. S. 139, 32 Sup. Ct. 71, 56 L. Ed. 128, where the Supreme Court held that:

"It is impossible in reason to conceive that Congress commanded the giving of testimony, and at the same time intended that false testimony might be given with impunity in the absence of the most express and specific command to that effect."

And the court in the same case also held that the sanction of an oath and the imposition of a punishment for false swearing are inherently a part of the power to compel the giving of testimony, and are included in that grant of authority, and are not prohibited by the immunity as to self-incrimination. The court said:

"Of course this proposition is essentially the resultant of the first, since unless it be well founded the first also must be wanting in foundation. This must be the result, as it cannot be conceived that there is power to compel the giving of testimony where no right exists to require that the testimony shall be given under such circumstances and safeguards as to compel it to be truthful. In other words, this is but to say that an authority which can only extend to the licensing of perjury is not a power to compel the giving of testimony. Of course these propositions being true, it is also true that the immunity afforded by the constitutional guaranty relates to the past and does not endow the person who testifies with the license to commit perjury."

The court in that case expressly approves Edelstein v. United States, 149 Fed. 636, 79 C. C. A. 328, 9 L. R. A. (N. S.) 236, and Wechsler v. United States, 158 Fed. 579, 86 C. C. A. 37, and expressly disapproves In re Marx et al. (D. C.) 102 Fed. 676, and In re Logan (D. C.) 102 Fed. 876. In Daniels v. United States, 196 Fed. 459, 116 C. C. A. 233, it is expressly held by the Circuit Court of Appeals, 6th Circuit, that:

"The provision of Bankruptcy Act July 1, 1898, § 7a (9), c. 541, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424) that no testimony given by a bankrupt on his examination 'shall be offered in evidence against him in any criminal proceeding,' has reference only to crimes committed previous to the giving of such testimony, and not to any criminal proceeding based on a crime inherent in the bankrupt's examination, and in a prosecution for perjury committed during the examination the alleged false testimony not only may be given in evidence, but any other testimony of defendant given in the examination which is relevant to the issue and tends to establish the falsity of that on which the prosecution is based."

[6] This court cannot approve or follow United States v. Rhodes (D. C.) 212 Fed. 518, wherein it holds that because the examination of a bankrupt being examined as to his property and the disposition thereof is ex parte, and one where there is no issue perjury cannot be assigned on the alleged falsity of the testimony so given. The bankrupt may be required by order of the court to attend before it or a special master appointed by it and submit to examination as to his property, its whereabouts and the disposition which has been made of it. The bankrupt is required to answer and give truthful answers so far as he answers at all, and there is an issue sufficient in law for the foundation of a charge of perjury in case the bankrupt willfully and knowingly gives false testimony regarding matters pertinent to the inquiry being made.

[7] The question put to the bankrupt was clearly pertinent. It related directly to the disposition by the bankrupt of certain of his property and to the question whether or not certain of his property was in the possession of himself or others. The indictment charged that the question was a material one for the purpose of ascertaining the assets of Coyle and the disposition of the same. The answer was that he had not, by payment of cash, check, or otherwise transferred, paid, or set over, or in any manner placed in the possession of his wife or of his son, any money whatsoever, excepting certain moneys mentioned. The indictment charges that on the 15th day of November, 1915, the defendant, Patrick H. Coyle, had paid to his son, Frederick J. Coyle, the sum of $450, as he, the said defendant, Patrick H. Coyle,

then and there well knew. And the indictment charges that this false testimony was given willfully and contrary to the oath taken.

It must be held, I think, that the disposition made by the bankrupt of his property is a pertinent inquiry, when examined either before or after adjudication, and if, when examined on this subject, the bankrupt willfully and knowingly and contrary to his oath testifies falsely regarding such disposition, it must be that a charge of perjury will lie. When the bankruptcy proceeding is pending, whether it be voluntary or involuntary, the bankrupt himself is a party as are the creditors to a proceeding pending in court, and it is not essential that some issue shall have been framed by allegations made by the one party and denied by the other. The petitioning creditors, if the proceeding be involuntary, the general creditors, if the proceeding be voluntary and the receiver have the right to examine as to the property and assets of the bankrupt and the whereabouts thereof, and it is not necessary that there should be a formal allegation made that certain property exists, or is in the hands of the bankrupt, or has been transferred by him, and that such allegations should have been denied prior to such examination and in order that a charge of perjury will lie, if false testimony on the subject is given.

[8] It is contended by the defendant that this indictment is bad and insufficient, in that it fails to show that the attention of the bankrupt was called to the particular payment of money, $450, mentioned in the indictment. But it does not appear that the interested parties conducting the examination had any knowledge of such payment, and how can it be said that it was their duty to call the attention of the bankrupt to a disposition of property or money made by him and which was peculiarly and solely within his knowledge and that of his son. It would appear from the allegations of the indictment that the defendant was seeking to conceal from his creditors or those representing them the payment in question. It does not appear from the indictment that any trick was being practiced upon the bankrupt. He knew whether or not within the time mentioned he had disposed of or transferred any of his money by check or otherwise. His creditors may have known and may not have known. There is no presumption that they did know.

[9] The defendant also contends that the indictment should show that the $450 was transferred or set over or given to the son for the purpose of giving to the son legal possession or ownership of the money transferred by the check. This contention cannot be sustained. If the bankrupt by check or otherwise transferred $450 of his money to his son for the purpose of concealing it from his creditors, or having him hold it pending the bankruptcy proceedings, or paying it back to the bankrupt, the bankrupt retaining title, the fact of this disposition of the money being concealed, it was material, and there would have been a transfer or payment or setting over of money, or a placing in the possession of the son money of the bankrupt.

[10] The defendant also contends that the question propounded to the bankrupt called merely for a conclusion of law and that every proposition embraced in the question could have been answered in the negative and the answer be perfectly truthful, although there may have

been an actual change of money or its equivalent from the defendant's hands to the hands of the son. The defendant argues, therefore, that on the face of the indictment it is clear that no perjury was committed, even if the answer given was untrue and $450 had been paid by check to the son by the bankrupt within the time mentioned. With this contention this court cannot agree. If the bankrupt had transferred by check, or paid by check, or set over by check, or in any manner placed in the hands of his son, Frederick Coyle, $450 of his money, or any other sum, prior to his bankruptcy and within the time mentioned, it was a material fact, and one peculiarly within the knowledge of the bankrupt, and if he did within the time mentioned give a check for $450 to the son, which had been cashed, then he had either transferred, or paid, or set over, or in some manner placed in the possession of his son money. The bankrupt could not say that such payment was neither a transfer, nor payment, nor setting over, nor the placing of money in the possession of the son.

[11] The defendant also contends that, if the answer had been the other way, it would have been truthful, inasmuch as the meanings of the words "transfer," "paid," "set over," and "possession" are equivocal and uncertain, and might include the act done and might not. In giving effect to this indictment we must take it as it reads and give to the words found in it and to the words used by the bankrupt in giving his testimony their ordinary meanings.

. In the judgment of this court the indictment is good and charges an offense, and the demurrer must therefore be overruled.