**BERLEY v. FIOL.**

No. 148.

Circuit Court of Appeals, Second Circuit.

Jan. 12, 1942.

Edward G. Baker, of St. George, S. I., N. Y. (Edward G. Baker, of St. George, S. I., N. Y., and Irving Ginsberg, of Staten Island, N. Y., of counsel), for Thomas F. Berley.

Leon Fiol, Trustee in Bankruptcy, appellee and attorney in person.

Kamen & Ostertag, of New York City (S. S. Ostertag, of New York City, of counsel), for E. B. Latham & Co., objecting creditors, appellees.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

■ The appellant Berley filed his petition for a discharge in bankruptcy. There were objections made by Leon Fiol, the trustee, and by E. B. Latham & Co., a judgment creditor. The objections were based upon alleged false representations in writing to obtain "money or property on credit" to: (a) Ideal Personal Finance Association in November, 1936; April, 1937; September, 1937, and May, 1938; (b) Central Public Loan Corporation, successor of Ideal Personal Finance Association, in October, 1938; January, 1939, and June, 1939; (c) Weber & Heilbroner in August, 1938.

In the original application of November, 1936, Berley gave his occupation as chief clerk of the Board of Elections; the cost of his real estate as $8,500, its location

as 250 Pelton Avenue, Richmond, and a mortgage thereon securing a loan by the H. O. L. C. at $5,900. A blank provided to show the person in whose name the title to the property stood was not filled in, but another blank headed "rent" was filled in with the word "own." He testified that 250 Pelton Avenue belonged to his wife and that the title was in her name, as was the fact. He stated in answers to questions in the 1936 application that he owed nothing on loans, or as co-maker, endorser or guarantor, and only owed some small personal bills in which he named a doctor's bill of $150 and a balance of $525 due on his automobile payable at $25 per month. This application did not set forth a judgment for $4,269.69 which E. B. Latham & Co. had recovered against him on July 25, 1930, in the New York Supreme Court and which is still wholly unpaid. He however testified that he informed Ideal Personal Finance Association of the judgment and someone appears to have written across the application the following: "Check him on the judgment of $4369.00. See look up," and below this "OK. against corporation that failed and can't collect from him. Explained in detail." Upon the foregoing application Berley received a loan of $300 from Ideal Personal Finance Association. In April, 1937, he signed a new application for a renewal loan of $300, $140 of the former indebtedness having been paid. A blank in the application designed to show what rent he paid was filled in with the word "own" and, aside from a balance of $450 due on his automobile, he stated that the amount of other bills was "current only." His answers in applications for renewal loans of $300 in September, 1937, January, 1938, and May, 1938, were substantially the same as before. In his application to General Public Loan Corporation in October, 1938, for a renewal of the $300 loan, there was the question: "Do you own real estate?" to which he replied: "Frame house 250 Pelton Avenue." He replied to the question: "Name and address of landlord" with the words: "Buying—H. O. L. C." He also stated that he owed all creditors, other than H. O. L. C. and the General Public Loan Corporation, $25, and that: "My/our total liabilities excluding real estate liens" were $200.

His applications to General Public Loan Corporation for renewals in January, 1939, and in June, 1939, contained substantially the same information.

In the financial statement given to Weber & Heilbroner in August, 1938, the statements were in the bankrupt's own handwriting, except for a check of the words "own home," which he claimed he did not make. Whoever made it, he signed the application to secure credit.

There is not the slightest doubt that the statements above referred to were false in that they represented that the bankrupt owned his own house and failed to disclose the large judgment against him. The words in the original application of 1936 "Check him on the judgment of $4369.00," followed by the statement that the judgment was against a corporation that had failed and that it could not be collected from the bankrupt, and uniform neglect to set forth the judgment in the various applications, bear out the objectors' contention that the statements in omitting that item were materially false.

The witness Meise, who attended to the renewal of the loan by General Public Loan Corporation, admitted that he talked over the judgment with the bankrupt and that he had the old applications (including the original one to Ideal Personal Finance Association) before him. But he said that the renewal application upon which he acted, and which stated that all creditors exclusive of the H. O. L. C. amounted to only $30, was correct according to the information which he received.

While the bankrupt claims that he made a full disclosure to his money lenders respecting the judgment, the written applications fail to support him and the original application indicates that the lender was led to believe that the judgment was against a defunct corporation. His excuse for stating that he owned 250 Pelton Avenue was that he had gone on the bond with his wife. This explanation was contradicted by his answer "none" to the question: "For whom do you appear as co-maker, endorser or guarantor?" Too many false statements were made by the bankrupt to give even plausible color to his excuses. His contention is extraordinary that the heading "Own Home" in the Weber & Heilbroner application for credit as checked was truthful because, while the house belonged to his wife, it was his "own home." Such an interpretation of the meaning of the words "own home" involves a disregard of their plain purport and in itself shows a lack of good faith. The contention that the signer of

the applications did not know their contents, which is so frequently made in situations like the present, is, though tenuous, a better explanation.

In granting the discharge the referee seems to have based his decision upon the theory that the burden of proving the specifications was on the objecting creditors. This is not the law. Reasonable grounds were shown for believing that the bankrupt had obtained money and property on credit and obtained renewals of credit through material false statements in writing respecting his financial condition. Section 14, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, provides that in such circumstances: "The burden of proving that he has not committed any of such acts shall be upon the bankrupt."

The falsity of the statement is too clear to justify the discharge granted by the referee. Accordingly the order of the District Court is affirmed.

FRANK, Circuit Judge, dissenting.