## In re FREEDMAN.

### Bankr. No. 48469.

United States District Court
E. D. New York.
Nov. 10, 1952.

Eugene Schwartz, Brooklyn, for bankrupt.

Martin E. Mandel, New York City, for creditor.

BYERS, District Judge.

The bankrupt has filed a petition to review the decision of the Referee denying discharge in that two specifications of objection, filed by a creditor, are deemed to have been sustained by the proof.

Five specifications were filed. Those numbered 2, 3 and 4 were dismissed for failure of proof, and that ruling is not in dispute.

Those remaining, numbers 1 and 5, are:

"1. Said Bankrupt has, with intent to conceal his financial condition, failed to keep books of account or records from which such condition might be ascertained.

"5. Said Bankrupt has failed to explain satisfactorily his losses of assets received by him on or about December 15, 1949 from premises 115–46 and 115–50 123rd Street, South Ozone Park, and has failed to explain satisfactorily his deficiency of the aforesaid assets received from the sale of the aforesaid premises to meet his liabilities."

The decision of the Referee is stated orally at the end of the hearing and it will be found at pages 61 to 65 inclusive, and is deemed to contain findings of fact and conclusions of law sufficient for present purposes.

The record discloses that the bankrupt was engaged in a series of building operations involving four houses which apparently he purchased and removed to locations which he had acquired for that purpose; this is during the years 1948 and 1949. After removal and rehabilitation, the respective premises were sold by the bankrupt and the four transactions involved yielded the gross sum of $55,000. They, were, therefore, of sufficient magnitude to justify the expectation of creditors that there would be in existence books and records from which the financial details of receipts and disbursements could be spelled out with reasonable certainty. The inquiry before the Referee was addressed to but two of those four transactions, being those referred to in the Schedules filed January 18, 1950 (A–3) thus:

"The following is a list of creditors who furnished labor and materials to premises No. 115–46 and 115–50 123rd Street * * * and were contracted between April 1949 to December 1st 1949, * * * no note has been given for the payment of such claim except there may be an unpaid check held by such creditor."

Twenty claims are listed, in the total sum of $6,544.41. There are no assets. The statement of affairs with reference to *loans repaid* recites:

"I repaid loans to my attorney Eugene Schwartz, who advanced funds to me to facilitate the closing of titles-his address: * * * he held the papers as a lien to secure payment thereof."

The bankrupt testified at the instance of the objecting creditor, and the record so made is consistent with the belief that he could well be classified as among the "untutored business folk" referred to in the dissenting opinion of In re Herzog, 2 Cir., 121 F.2d 581 at page 582. But even so, it may be doubted whether the creditors of such must for that reason be left in the dark concerning what the Referee characterized at page 47 as "cash in and cash out."

It is not contended for the bankrupt that he had any books whatever but reliance is had upon the assertion that such records as he had, namely, cancelled checks, bank statements and bills of creditors (Schedule B–6), contain the required information.

The testimony is that a collection of such loose papers contained in a carton and not even classified, was turned over to the Trustee, and that parts of three days were devoted by the latter and the attorney for the objecting creditor, to an unsuccessful effort to strike some kind of a balance therefrom.

That result can be understood in light of the bankrupt's testimony concerning his dealings with his attorney (p. 31):

"Q. Did you keep any record of what you received from Mr. Schwartz? A. No. He made the records. Whenever I gave him my checks, he would give me his checks.

"The Referee: Did you make an entry in your check book when you gave him that check, or did you just leave the stub blank?

"The Witness: I leave the stub blank, because it was money checked out at the closing.

"The Referee: Did he hand back the check to you when you got the money at the closing?

"The Witness: Yes, sir.

"The Referee: So, your book does not show any record?

"The Witness: No."

The foregoing was followed by a rather incoherent colloquy between counsel, which the Referee properly ordered stricken.

The witness was being examined apparently in connection with a sale of property other than those above referred to, and was shown what purported to be a closing statement which revealed a net profit, and in connection with which the bankrupt's attorney (p. 24) made this statement:

"* * * this statement that he is reading from is not the usual closing statement, but this statement he is reading from is the profit and loss sheet of his income tax return, and not the closing statement, * * *."

Seemingly, the tax year was 1949, although this is not too clear. There is significance in the revelation that the bankrupt had or maintained sufficient in the way of records for income tax purposes, at least as to transactions not now under examination; this somewhat emphasizes the burden which rested upon him to meet the requirements stated in Section 14, sub. c(2) of the Act, 11 U.S.C.A. § 32, sub. c.(2), in its most recent form.

A helpful comment upon the strictness of the law on this subject as shown by the successive amendments to the Act will be found in the case of White v. Schoenfeld, 2 Cir., 117 F.2d 131 at page 132. Perhaps the following quotation may be permitted:

"What will justify that failure depends largely upon how extensive and complicated the bankrupt's business is —a cobbler will succeed with much less than a manufacturer—but the important change is that since 1926 no moral obliquity need be shown. Honesty is not enough; the law demands as the condition of a discharge either that the bankrupt shall produce such records as are customarily kept by a person doing the same kind of business, or that he shall satisfy the bankruptcy court with adequate reasons why he was not in duty bound to keep them."

Other helpful decisions are: In re Marx, 7 Cir., 125 F.2d 335; In re Sandow, 2 Cir., 151 F.2d 807.

There is lurking in this record basis for the comment that since an attorney played an important part in the series of operations involved, a compilation of records of his own dealings, and data which were used for the purpose of the bankrupt's income tax returns, would have been feasible and reasonably to be expected if the bankruptcy proceeding itself were to come to a successful conclusion, from his client's standpoint.

The Referee's decision thus embodies findings of fact which have not been shown to be clearly erroneous, and hence the bankrupt's petition to review will be denied.

Settle order.