**In the Matter of Anita STONE, Bankrupt.**
**In the Matter of Michael STONE,**
**Bankrupt.**
**Nos. 53458, 53459.**

United States District Court
E. D. New York.
April 3, 1959.

144

Palmer, Masia & Palmer, New York City, for bankrupt. Samuel Masia, New York City, of counsel.

Hahn & Golin, New York City, for objecting trustee. George A. Hahn, New York City, of counsel.

ZAVATT, District Judge.

Voluntary petitions in bankruptcy were filed by Michael and Anita Stone, husband and wife, on September 5, 1957. Adjudications were made on the same day. Specifications of objection to the discharge of the bankrupts in each case were filed by the trustee. The objections in both cases were ordered tried at the same time by the Referee, and hearings thereon were held at various adjourned dates from July 22, 1957 to June 18, 1958. On November 17, 1958 the Referee's decision denying the discharge of the bankrupts was filed. In the case of Michael Stone the Referee sustained (1) the objection that the bankrupt had destroyed, concealed or failed to keep or preserve books of account or records from which his financial condition and business transactions might be ascertained; and (2) the objection that the bankrupt made a materially false statement in writing respecting his financial condition in connection with an application for a loan or extension of credit to his wife. In the case of Anita Stone the Referee sustained (1) the objection that the bankrupt obtained "money or [sic] credit", or an extension or renewal of credit, by making a materially false statement in writing respecting her financial condition; and (2) the objection that the bankrupt destroyed, concealed or failed to keep or preserve books of account or records from which her financial condition and business transactions might be ascertained. There are now before the court for decision petitions to review the orders of the Referee denying discharge to the bankrupts. This decision will deal first with the objections relating to the concealment of or failure to keep books or records from which the financial condition and business transactions of the bankrupts might be ascertained, and second with the objections relating to the making of materially false statements in writing respecting the financial condition of the bankrupts, for the purpose of obtaining money on credit, or an extension or renewal of credit.

## I.

The schedules filed by Michael Stone listed liabilities in excess of $27,000, consisting inter alia, (1) of judgments obtained in 1956 by James Talcott Inc., in the amount of $5,233, and by Congress Factors Corp., in the amount of $2,034.-43, as the result of guaranties by the bankrupt of debts of Ellen-Joan Fashions Inc.; (2) money owed to one Al Sadolsky in the amount of $9,000, and to one Gussie Fishman (the name of Anita Stone's mother is "Mrs. G. Fishman") in the amount of $3,000, as the result of loans, the proceeds of which, according to Michael Stone's testimony, were put into Ellen-Joan Fashions Inc.; (3) a balance of $2,000 due on a judgment obtained by one Ralph Smith in 1953 upon Michael Stone's endorsement of another's note; (4) a balance of $3,500 due on a judgment obtained by Bryant Park Building Corp. in 1953 upon Michael Stone's liability for the payment of rent under a lease; and (5) an amount of $1,300 owed to the Chemical Corn Exchange Bank by reason of Michael Stone's guaranty of a loan made by said bank to Anita Stone. The schedules disclose no assets which would be available for distribution to creditors. The schedules of Anita Stone list liabilities in excess of $10,500, including (1) judgments obtained in 1956 by James Talcott Inc., in the amount of $5,233, and by Congress Factors Corp., in the amount of $2,034.43, as the result of guaranties by her of debts of Ellen-Joan Fashions Inc.; and (2) claims for money loaned by the Chemical Corn Exchange Bank in the amount of $1,300, and the Beneficial Finance Company in the amount of $200. Her schedules likewise disclose no assets which would be available for distribution to creditors. The amount of $1,600 is shown as the balance due on an automobile which is secured by a chattel mortgage, and which is valued at $1,400 in the statement of personal assets.

Until September or October, 1955 Michael Stone was engaged in the business of manufacturing dresses under the corporate name of Ellen-Joan Fashions Inc.

He is now employed by another firm as a salesman. All of the stock of Ellen-Joan Fashions Inc. was held by Anita Stone as nominee for her husband. She guarantied a number of the corporation's debts, but did not work for the corporation. Michael Stone was an officer and director of the corporation, and served it as salesman, road-man, stylist and production man. As shown above, the majority of the debts from which he seeks discharge arose through the operation of the corporation. Michael Stone stated that he earned $8,000 and $9,600 in the two years preceding the filing of his petition in bankruptcy. Anita Stone has worked for about twelve years. She has been a dress buyer for five years, and is presently so employed. She earned $5,000 in each of the two years preceding the filing of her petition in bankruptcy. Ellen-Joan Fashions Inc. went out of business in September or October of 1955, and appears to have been adjudicated a bankrupt.

As to Anita Stone, the evidence was that commencing in November, 1953 she had assumed liability as guarantor of a number of debts of her husband's corporation and that for three years thereafter she earned a salary not exceeding $100 per week. She had a special checking account at the Trade Bank & Trust Company and paid ten cents for each check drawn. She testified that she made no stub records of her checks, and threw the stubs away when a book which had contained checks was empty. She testified that she made no record of deposits. Despite her income of $100 per week, she deposited approximately $15,500 in her account in the six-month period from December 1, 1954 to May 31, 1955. No records of any type were presented to identify the source of these deposits, and there was no testimony on this point. During the same six-month period 73 checks written by Anita Stone were cashed by the bank in a total amount in excess of $15,500. Anita Stone turned over to the trustee 34 of these cancelled checks in a total amount of approximately $1,550, but the remain-

ing 39 checks in a total amount of approximately $14,000 (including one check in the amount of $4,500) were unavailable. It is known that in the period from December 1, 1954 to September 5, 1956, the date of the filing of the petition, the bank cashed approximately 190 checks written by Anita Stone, in a total amount of approximately $21,500. Of these, 73 checks in a total amount of approximately $3,500, together with 72 checks cashed prior to December 1, 1954, were the sum total of the "books of account or records" presented by Anita Stone from which her financial condition and business transactions might be ascertained.

Michael Stone also maintained a special checking account at the Trade Bank & Trust Company, upon which he paid ten cents for each check drawn. He too stated that he made no stub records of his checks, and threw the stubs away when a book which had contained checks was empty. He testified that he maintained no record of his personal finances. Although he claimed that his drawings from Ellen-Joan Fashions Inc. were reflected in the books of the corporation, no attempt was made to produce such books or the information contained therein. (The bankrupt now claims that the attorney for the trustee here is the attorney for the trustee in bankruptcy of Ellen-Joan Fashions Inc.) From December 1, 1954 to the date of the filing of the petition the bank cashed approximately 95 checks written by Michael Stone in a total amount of approximately $4,900. Of these, 12 checks cashed in this period in a total amount of approximately $1,060, together with 37 checks cashed prior to December 1, 1954 in a total amount of $870, were the sole "books of account or records" brought forth by Michael Stone from which his financial condition might be ascertained. Among the absent records were any documents evidencing the Sadolsky or Fishman loans.

It is perhaps significant that of 85 checks cashed by the bank for Anita Stone in 1956, and that of 88 checks cashed for Michael Stone in that year, not a single cancelled check has been given to the trustee. This, despite the fact that approximately $8,000 cleared the two accounts in the year in which the petitions in bankruptcy were filed.

The Referee found upon these facts that Anita Stone failed to keep or preserve books or records from which her financial condition and business transactions might be ascertained, and that the large deposits made in her checking account required her to keep a record in some form so as to disclose the source of the income, and a further record so as to disclose the payments made by her. He found that Michael Stone failed to keep books or records from which his financial condition and business transactions might be ascertained, and that, considering the extent of his personal liabilities, he should have kept some form of personal records as to his receipts, disbursements and liabilities.

Certain principles govern the review of these determinations. (1) The decision of the Referee is controlling unless the court is quite sure that it was wrong. Dabah v. Simmons, 2 Cir., 1953, 205 F.2d 55. (2) The discharge of a bankrupt from his debts is a privilege or favor that has been granted by Congress upon such terms as it has seen fit to impose. Ibid. (3) It is the purpose and intent of Section 14, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. b to make the privilege of discharge dependent upon a true presentation of the bankrupt's financial affairs. In re Underhill, 2 Cir., 1936, 82 F.2d 258, certiorari denied Underhill v. Lent, 1936, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402, the Court stated at pages 259–260 of 82 F.2d:

"* * * The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each [case] of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting

of the discharge, and if such disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies. * * * "

(4) Since the amendments to the Bankruptcy Act in 1926 it has not been necessary to prove any intent on the part of the bankrupt to conceal his financial condition, in order to bar a discharge under Section 14, sub. (2) of the Act. Karger v. Sandler, 2 Cir., 1932, 62 F.2d 80; White v. Schoenfeld, 2 Cir., 1941, 117 F.2d 131; Dabah v. Simmons, supra. (5) It has been uniformly held that after a creditor has shown the absence of any adequate records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was "justified." Karger v. Sandler, supra. In White v. Schoenfeld, supra, 117 F.2d at page 132, it was pointed out that what will justify the failure of the bankrupt to produce adequate records

"* * * depends largely upon how extensive and complicated the bankrupt's business is—a cobbler will succeed with much less than a manufacturer—but the important change is that since 1926 no moral obliquity need be shown. Honesty is not enough; the law demands as a condition of a discharge either that the bankrupt shall produce such records as are customarily kept by a person doing the same kind of business, or that he shall satisfy the bankruptcy court with adequate reasons why he was not in duty bound to keep them."

(6) Each case stands upon its own facts with respect to the inquiry as to justification, In re Underhill, supra, with a reasonably wide discretion in the court to determine whether the failure to keep or preserve records was justified under all the circumstances of the case. In re Marx, 7 Cir., 1942, 125 F.2d 335.

In the case at bar Michael Stone operated a business, albeit in corporate form. The majority of the debts from which he seeks discharge arose through the operation of his business. His transactions were "of sufficient magnitude to justify the expectation of creditors that there would be in existence books and records from which" his financial affairs "could be spelled out with reasonable certainty." In re Freedman, D.C.E.D.N.Y.1952, 108 F.Supp. 219, 220. Among the debts scheduled are two totaling $12,000 in amount, yet there is not an iota of proof of a documentary nature as to the existence of these debts. The few checks which have been turned over to the trustee fall far short of a disclosure from which the financial status and business transactions of the bankrupt can be ascertained. And there has been a complete absence of any attempt to justify the failure to present documentation as to finances other than by claiming (1) that at the time of the filing of the petition Michael Stone was a wage earner and was not engaged in business; (2) that the books of Ellen-Joan Fashions Inc. show all the moneys which he received from that corporation; and (3) that the trustee could have obtained photographs of Michael Stone's deposit slips and checks from the bank. The first claim does not begin to justify the failure of Michael Stone to maintain records with regard to his activities other than his present position as a salesman; activities which are the crux of this proceeding. The second claim is based upon a fact which has no substantiation in this record. Furthermore, it does not appear that the books of the corporation would reflect the personal loans to Michael Stone, or in any way indicate what was done by him with the money withdrawn from the corporation. The third claim is based upon another premise which is not clear from the record. And in any event, it was only a minor portion of Michael Stone's financial affairs which was conducted through his bank account. Upon these facts I conclude that the bankrupt failed to justify his failure to keep or preserve financial records, cf. In re Sandow, 2 Cir., 1945, 151 F.2d 807; White v. Schoenfeld, supra, and that the Referee properly sustained this objec-

tion. Although the Referee does not in so many words say that the failure to keep or preserve records was unjustified, the question is one which "is open for independent decision by the judge like any other question of law." In re Sandow, supra, 151 F.2d at page 809.

■ As to Anita Stone, the claimed justification for her failure to keep or preserve financial records is grounded in the claim that she was no more than a salaried employee who was under no obligation to keep records. But this claim ignores the fact that in the six-month period from December 1, 1954 to May 31, 1955, Anita Stone banked and issued checks upon an amount of money which was three times her annual income. At this time she was the guarantor of a number of debts of her husband's corporation. There was no explanation whatever of the source of the very large deposits in her account during this period. Nor are the creditors able to ascertain what the disposition of these funds has been. The Referee did not specifically pass upon the allegation in the specifications that the bankrupt destroyed or concealed the records from which her financial condition might be ascertained. The pattern of retaining cancelled checks for minor expenditures, and of failing to produce a comparable number of checks which represented the great bulk of the withdrawals from her account (including one check in the amount of $4,500), together with the production of a number of checks for prior years but none issued in the year in which the petition was filed, strongly indicates a "sinister" motive, cf. Karger v. Sandler, supra, and would have supported a conclusion that the bankrupt intentionally destroyed or concealed her records to prevent her creditors from ascertaining her financial condition and business transactions. Cf. In re Hodge, D.C.N.D.N.Y.1913, 205 F. 824. At the very least, it can be said that others in like circumstances would have kept the records which were unavailable to Anita Stone, and it is clear from the facts here that there was no showing of unusual circumstances which would indicate that she was under no duty to keep them. The Referee properly sustained this objection as to Anita Stone.

II.

The Referee found that Anita Stone executed an application for a loan from the Chemical Corn Exchange Bank in the amount of $1,584. This application was dated June 12, 1955. The loan was granted by the bank on June 16, 1955, and consisted in part of the renewal of an already outstanding loan to Anita Stone, and in part of the turning over of money on credit to her. The application contains the question: "Are you obligated as Co-maker, Endorser, Or Guarantor to any bank, loan, installment or finance company, or others?" The answer made to this question was "No". Following the question was the statement, "If so, give details below. (If None Please State 'None'.)" It was found that Anita and Michael Stone had executed a written guaranty of the obligations of Ellen-Joan Fashions Inc. to James Talcott Inc. and/or Hamilton Factors; that this guaranty was executed and acknowledged before a notary public on April 6, 1955; and that as of June 12, 1955 there was due from Ellen-Joan Fashions Inc. to James Talcott Inc., the sum of $4,957.78. It was found further that Michael and Anita Stone had executed a written guaranty of the obligations of Ellen-Joan Fashions Inc. to Congress Factors Corp. dated November 30, 1953, and that on June 12, 1955 there was due from Ellen-Joan Fashions Inc. to Congress Factors Corp. the sum of $1,972.32.

■ The test set forth in Industrial Bank of Commerce v. Bissell, 2 Cir., 1955, 219 F.2d 624, 626, is that under Section 14, sub. (3) of the Bankruptcy Act an objecting creditor must establish three major factors: "(1) that the bankrupt, for the purpose of obtaining money or property on credit, made a written statement respecting his financial condition, (2) that such statement was 'materially false,' and (3) that it was relied upon by the objecting credi-

tor." To be "false" the statement must have been "made and acquiesced in either with actual knowledge that it was incorrect, or with reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct." The creditor establishes a prima facie case by showing to the satisfaction of the court that there are reasonable grounds for believing that the above three grounds are present. Once this is done, the bankrupt has the burden of proving facts which remove the case from the bar of the Act. The Referee classified Anita Stone's application for the loan as a "materially false" statement; found that the bank made the loan and relied upon the statement; and found that Anita Stone's explanations of her acts failed to meet the burden of proof placed upon her by the Bankruptcy Act. The Referee's findings are far from being "clearly erroneous," General Order 47, 11 U.S.C.A. following section 53; Klein v. Morris Plan Industrial Bank, 2 Cir., 1942, 132 F.2d 809, 144 A.L.R. 1278, and his decision sustaining this objection to the discharge of Anita Stone must be affirmed.

 The Referee found that Michael Stone executed a co-maker's statement in writing, dated June 12, 1955, in support of his wife's application for the loan from the Chemical Corn Exchange Bank. No answer was given to the following question: "Are there any judgments entered, or garnishee or other legal proceedings pending against you and have you executed any wage assignments?" At this time the aforementioned Smith and Bryant Park Building Corp. judgments had been entered against Michael Stone. It was concluded that the question on the statement called for an answer as to existing judgments, and that the failure to give information as to the balance due on the two judgments rendered the statement materially false. In this the Referee erred. The correct rule appears to be that set forth in Kansas Federal Credit Union v. Niemeier, 10

Cir., 1955, 227 F.2d 287, 290 where the following is quoted from International Harvester Co. of America v. Carlson, 8 Cir., 1914, 217 F. 736, 739:

> "This schedule of liabilities is left entirely blank in the statement, and it seems to be contended that because of these blanks the bankrupt states that he owed nothing that could properly come under either of these heads; whereas, in fact, the evidence shows that he was indebted in considerable sums under each head. We do not think that an omission constitutes a 'material statement', within the meaning of section 14 of the Bankruptcy Act. There is nothing in any other part of the form which declares that blanks unfilled are to be construed as representing that nothing is owing under the heading. A 'material statement' means not a blank, nor an inference from a blank. There must be a direct statement, either negative or positive, which is false, to justify the denial of the bankrupt's discharge."

See In re Monaghan, D.C.E.D.N.Y.1941, 40 F.Supp. 245, to the same effect.

The cases upon which the Referee relied are distinguishable in their facts. In re Gregor, D.C.E.D.N.Y.1943, 50 F. Supp. 918, 919 involved a form executed by the bankrupt which provided, "* * * I hereby represent and warrant to you * * * that no information has been concealed or withheld which is material to the risk or essential to a consideration by you, of, and a proper decision by you on this application." Cohn v. Arkin, 2 Cir., 1943, 132 F.2d 724 was a case in which the bankrupt was found to have drawn lines in certain blanks in answer to questions. The court regarded these lines as the equivalent of negative answers, but did not directly pass upon the question of whether blanks left unfilled constituted material misstatements. In the view which I take of this matter I conclude that the Referee erroneously sustained the second objection to the discharge of Michael Stone.

**150**

### Conclusion

The orders of the Referee denying the discharges in bankruptcy of Michael Stone and Anita Stone are affirmed. Settle orders on notice.