**In the Matter of Walter BERNFELD, Bankrupt.**

**No. 64–B–940.**

United States District Court
E. D. New York.

Nov. 9, 1965.

Stanley Nitzburg, New York City, for bankrupt; Isidore Sapir, New York City, of counsel.

Levy, Murphy & Stolz, New York City, for petitioner, Royal Nat. Bank of New York; David S. Elkins, New York City, of counsel.

ZAVATT, Chief Judge.

On October 20, 1964, Walter Bernfeld filed a petition in bankruptcy. Thereafter, on November 30, 1964, Royal National Bank of New York filed objections to the granting to Bernfeld of a discharge in bankruptcy. The stated grounds of the objections were that the bankrupt assigned "false and fictitious" accounts receivable to the objectant bank, with knowledge that the accounts receivable were "false and fictitious" and "for the purpose of procuring and obtaining" certain moneys from the objectant bank. Objectant further alleged that the ac-

counts receivable "were delivered with the intent to defraud the said Bank. * * *" The objectant bank did not specify the provision of the Bankruptcy Act under which it was objecting.

A hearing was held before Referee in Bankruptcy Joseph V. Costa on January 20, 1965. At the conclusion of the testimony on behalf of the objectant, the bankrupt moved to dismiss the objections to his discharge

"on the ground the objectant has failed to provide an adequate basis or create any reasonable question as to the conduct of the individual bankrupt in obtaining credit from the Royal Bank and has only introduced documents acknowledging that the bank was willing to advance moneys against post-dated invoices and did so to their financial loss but not through any fault on the part of the bankrupt, who submitted these accounts with post-dates on them and in no way attempted to get money under false pretenses." (Transcript of January 20, 1965 at 79–80.)

The Referee denied the motion recognizing that the objectant bank had established a prima facie case. (*Ibid.*) The hearing was adjourned until June 8, 1965 to give the bankrupt "an opportunity to answer charges made." (*Id.* at 81.) At the conclusion of the hearings, the Referee found "that insofar as the allegations in the specifications are concerned, the objectant has made out a prima facie case." (Transcript of June 8, 1965 at 153–54.) He then continued:

"The question is was there a fraudulent representation made by the bankrupt with an intent to defraud.

My conclusions are that it is the well settled rule that the Bankruptcy Act on the question of discharge is to be strictly construed against the objectant and liberally construed in favor of the bankrupt. The burden of proof on an objection is always on the part of the objectant. I did state in my findings the fact that a prima facie case was made out by the objectant in its direct case and upon

the admission made by the bankrupt. However, I find that the bankrupt did make an explanation satisfactory to the Court to indicate that there was no fraudulent intent on his part.

It is well established that the objections, as filed in this case, would indicate a violation of Section 14(c) (1) of the Bankruptcy Act. It certainly does not indicate a violation of Section 14(c) (3), which would be while in [sic] engaged in business as a sole proprietor, et cetera, obtained credit by making or publishing or causing to be made or published a false statement.

I find that the violation is one under Section 14(c) (1), alleging that he committed an offense punishable by imprisonment provided under Title 18, United States Code Section 152, and the law is well settled that in order to sustain an allegation under that subdivision of Section 14, the objectant must prove the commission by the bankrupt of an offense which is punishable by imprisonment, as provided under that section, in that there must be an intent to defraud.

The facts, as adduced by me on this hearing, indicate a failure of proof or a failure on the part of the objectant to sustain that burden to prove that there was an intent to defraud and this conclusion is reached, based upon the dealings between the parties, namely the slipshod manner in which the original agreement itself was drawn, the signing of the same before it was filled in, and the two provisions which I consider to be very important, namely the amount of the extent of credit and the interest to be charged, not being inserted in the agreement, which indicated somewhat of a close relationship or fiduciary relationship between the parties, at least the bank trusting the debtor and the debtor trusting the bank as to the amount or extension of credit or interest to be charged.

That thereafter the dealings between the parties indicated a somewhat different relationship than that of the ordinary borrower in that the father of the bankrupt was an officer of the bank and perhaps there was some tendency upon the officers or employees of the bank to overlook strict adherence to the provisions of the agreement, such as even providing the shipping bills of lading or the shipping receipts, which Mr. Orens claims or stated, was waived in this case.

Also, the leniency with which the bank permitted the debtor or the bankrupt to exceed its limited credit line of $135,000, all which would indicate that there was a relationship here of trusting one another, feeling there would not be any violation of this trust, but still there is no indication of in fact an intent to defraud.

The bank did make a loan beyond the amount it expected to make and the assets of the estate are not sufficient to satisfy the loss on the amount it extended credit upon, based upon shipments which were not fulfilled, but I find the bank should have so known from the documents that were presented to this Court, which came from the records of the bank itself, true as supplied by the bankrupt to the bank. However, they did come from the records of the bank itself concerning which Miss Abrams testified and which they took for granted and they felt that the borrower had complied with certain records, as she understood it, but it was evident from an examination of these schedules, which were submitted by the bankrupt to the bank, right on the face of these papers, that shipments had not yet been made and shipments would not be made until a later date. Notwithstanding that fact the bank decided to continue to extend credit to the bankrupt.

In such a case, I cannot in my heart find it to be an intent to defraud by the bankrupt but rather a course of business conducted by the bankrupt in which the bank acquiesced.

I therefore find that the objectant, the bank herein, has failed to sustain the burden of proof in its specifications of the commission by the bankrupt of an offense punishable by imprisonment as provided under Title 18, United States Code, Section 152 and dismiss the objections." (Transcript of June 8, 1965 at 159–63.)

Thereafter, on July 19, 1965, Referee Costa ordered Walter Bernfeld discharged from his debts. On July 23, 1965, objectant Royal National Bank filed, in this court, a petition to review the Referee's order, setting forth substantially the same arguments it presented in its original objections to the granting of a discharge. Both the objectant and the bankrupt submitted memoranda to this court. The petition to review was set for argument on August 11, 1965. The objectant, in its memorandum, indicates the statutory provision under which it objects to the discharge by quoting [incorrectly] a portion of section 14, sub. c(1) of the Bankruptcy Act. Objectant, further, seems to assume that it has the "burden of proving" intent on the part of the bankrupt to defraud a creditor. Bankrupt, on the other hand, submits a memorandum designed to establish that objectant bank has not established a case in fraud under New York law. This court held a hearing on the petition to review and alerted counsel for both sides to the confused understanding of the law manifested by all concerned and remanded the findings of fact and conclusions of law to the Referee directing him to clarify and set forth

"(1) the section and particular portion of the Bankruptcy Act and/or United States Code under which he found that Objectant had made out a prima facie case; and

(2) The burden of proof imposed upon the parties on the hearing on objections * * *."

On August 24, 1965, the Referee filed Supplemental Findings of Fact and Conclusions of Law. Concerning the burden of proof, he stated:

"The burden of proof of the specifications of objection to discharge has consistently been held to be on the objectant. Industrial Bank of Commerce v. Bissell, 2 Cir. 219 F(2) 624.

At the close of the objectant's case I ruled that it had made out a prima facie case and denied the motion to dismiss on the ground that objectant had failed to make out a prima facie case. By that ruling the burden shifted to the bankrupt to come forward and prove to my satisfaction 'that he has not committed any such acts' which under Section 14(c) would prevent his discharge, limited in this instance to the allegations made by the objectant. This burden the bankrupt undertook and as I previously found he did so successfully. * * *

Under that procedure and in that context I found that on the *entire case* the objectant had failed to sustain its burden of proof, which is where, it is my understanding, it always lies since that which shifts, in my opinion, is only the burden of coming forward. Industrial Bank of Commerce v. Bissell, Supra."

As to the applicable provision of section 14, sub. c, the Referee continued:

"As is very often the case the specifications of objection did not designate the specific provision of Section 14(c) under which the objection was taken. At the close of the hearings the Court was put to the task of ascertaining which of the provisions of Section 14(c) of Bankruptcy Act could apply to the specifications and proof. Throughout the course of the hearings there was uppermost in my mind the fact that the specifications as pleaded did not come within any of the provisions of Section 14(c) of the Act, however in keeping with suggested procedure of our District Court and Court of Appeals an opportunity was given to both sides for a full and complete hearing. The only possible provisions of Section 14(c) which might apply were Clauses (1) or (3). In my analysis I concluded that Clause (3) of Section 14(c) of the Act was not applicable since I then was of the opinion and still am that Clause (3) is limited in its application to statements respecting financial condition, which was not the case at hand. Of signifance [sic] on this issue is the fact that the specifications refer to the bankrupt's actions as 'representations' rather than 'statement in writing respecting his financial condition' as specified in Section 14(c) (3).

It was never the intention of Congress to extend Clause 3 of Section 14(c) to all cases of false written statements where credit happens to have been given. It was formerly held that Clause (3) was not confined to statements of general financial condition but covered any material statement of fact made in writing to a creditor to induce the credit. Matter of Day (D.C.Ga) 268 Fed 871; Matter of Smith (D.C.N.Y.) 232 Fed 248. Subsequently, the clause was limited in its application to statements respecting financial condition. Johnston v. Johnston (C.C.A. 4th Cir) 63 F(2) 24, Matter of Little (C.C.A. 2d Cir) 65 F(2) 777; Matter of Scheffler (C.C.A. 2d Cir) 68 F(2) 902; In re Morgan (C.C.A. 2d Cir) 267 Fed 959. As a further example, somewhat akin to the type of statement used in the instant case, is the holding in Scott v. Smith (C.A. 9th) 232 F(2) 188 where a statement on the face of a note that it is secured by a deed of trust *is not* a statement respecting the financial condition of

the maker. This case was recently cited and followed in Obrist v. Christensen 9 Cir, 1964, 232 [sic] (337) F(2) 220.

\*    \*    \*    \*    \*    \*

Hence my observation and Finding as set forth on Page 160 of S.M. June 8, 1965 that the specifications of objection in this case did not come within the purview of Section 14(c) (3) of the Bankruptcy Act.

\*    \*    \*    .   \*    \*    \*

There remained only the possibility of the applicability of Clause (1) of Section 14(c) and this only under the possible contention that the bankrupt in these and prior examinations before me and under oath had reiterated these purported fraudulent statements and had thusly made a false statement under oath in a bankruptcy proceeding, which would be punishable under the first provision making of a false oath, etc. Title 18 Section 152 as provided in Section 14(c) (1) of the Bankruptcy Act. Edelstein v. U. S. [8 Cir] 149 F. 636 [9 L.R.A.,N.S., 236], Cert. Den. 205 U.S. 543 [27 S.Ct. 791, 51 L.Ed. 922]; U. S. v. Coyle [D.C.] 229 F. 256. In this connection it is to be noted that the attorney for the objectant restricts his argument in his memorandum to this point evidently realizing that Clause (3) does not apply.

Further evidencing a misapprehension on his part as to the extent of the applicability of Title 18 Section 152 and the phase of this purported violation into which I examined and made my Findings is objectant's attorney's statement at page 10 of his memorandum

'The evidence before the learned Referee is overwhelming that the bankrupt, \* \* \* had obtained moneys from it (the Bank) with intent to defraud the Bank \* \* \*.'

Title 18 Section 152 does not encompass such a crime nor does Section 14(c) of the Bankruptcy Act enumerate this as one of the seven grounds upon which a discharge may be denied.

The objection to discharge is dismissed and the order granting discharge dated July 19, 1965 is to stand effective."

Objectant Bank petitioned this court to review the Referee's Supplemental Findings of Fact and Conclusions of Law, on August 25, 1965. Again objecting to the Referee's Findings of Fact, the objectant asserts that the bankrupt did not satisfactorily explain his actions after the said objectant had proved a prima facie case. Objectant, however, makes no reference to statutory or case law authority on the issue of burden of proof and, further, does not specify which provision of section 14, sub. c of the Bankruptcy Act he is relying upon. Bankrupt, on the other hand, in his memorandum, merely reargues the facts to show that there was no intent to defraud.

## ON THE ISSUE OF BURDEN OF PROOF

▮ In his Supplemental Findings of Fact and Conclusions of Law the Referee stated that:

"The burden of proof of the specifications of objection to discharge has consistently been held to be on the objectant. \* \* \* [I]n that context I found that on the *entire case* the objectant had failed to sustain its burden of proof, which is where, it is my understanding, it always lies since that which shifts, in my opinion, is the burden of coming forward."

Section 14, sub. c of the Bankruptcy Act, 11 U.S.C. § 32 as amended September 2, 1957, Pub.L. 85–275, § 1, 71 Stat. 599; July 12, 1960, Pub.L. 86–621, § 1, 74 Stat. 408 provides "[t]hat if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reason-

able grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt." That provision of the Act has been applied by this court, see In re Stone, 172 F.Supp. 142 (E.D.N.Y. 1959) (Zavatt, J.), and by the Second Circuit Court of Appeals, Berley v. Fiol, 124 F.2d 676 (2d Cir. 1942).

Although In re Stone, supra, presents facts not analogous to those in the instant case, Berley v. Fiol, supra, is controlling on the facts and law. In Berley, bankrupt had applied for a personal loan listing in his application, as his own, realty owned by his wife. After proof was introduced that bankrupt neither had title nor any interest in the property, bankrupt offered an explanation, not uncontradicted, which satisfied the referee in bankruptcy who thereupon granted a discharge. On petition to review, the order granting the discharge was vacated by order of the District Court. In re Berley, 39 F.Supp. 615 (E.D.N.Y.1941). The District Court's order was affirmed on appeal to the Second Circuit, that Court stating unequivocally that "[i]n granting the discharge the referee seems to have based his decision upon the theory that the burden of proving the specifications was on the objecting creditors. This is not the law. Reasonable grounds were shown for believing that the bankrupt had obtained money and property on credit and obtained renewals of credit through material false statements in writing respecting his financial condition. Section 14, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, provides that in such circumstances: 'The burden of proving that he has not committed any of such acts shall be upon the bankrupt.'" Berley v. Fiol, 124 F.2d 676, 678 (2d Cir. 1942).

The Referee in the instant case relies on Industrial Bank of Commerce v. Bissell, 219 F.2d 624 (2d Cir. 1955) for the proposition that the burden of coming forward is the only burden which shifts to the bankrupt, the burden of proof remaining with the objectant creditor. The Bissell case obviously does not support that proposition for there the court states at 626:

"To establish a *prima facie* case, the objecting creditor, under the proviso to Section 14, sub. c, is required to 'show to the satisfaction of the court that there are reasonable grounds for believing' [his specifications]. Once this is done, *the bankrupt has the burden of proving facts which remove the case from the bar of the [Bankruptcy] Act. * * *"* (Emphasis added.)

It is true that in In re Tabibian, 289 F. 2d 793 (2d Cir. 1961)—not cited by either the Referee or counsel—the Court of Appeals said that the bankrupt must "satisfactorily explain" the questioned transactions. The court's failure to use the term burden of proof, however, is understandable in light of its holding that the objectant creditor in that case had failed to establish a prima facie case.

In view of the Referee's belief that the burden of proof remains with the objectant creditor, even after he has set out a prima facie case, it is impossible to determine whether he was satisfied that the bankrupt fulfilled his burden of proof warranting a discharge.

### THE APPLICABLE PROVISIONS OF § 14(c) OF THE BANKRUPTCY ACT

The Referee stated in his supplemental findings that only two provisions of § 14, sub. c could conceivably be applicable, namely, § 14, sub. c(1) and § 14, sub. c(3). He, then, found that § 14, sub. c(3) was inapplicable on the grounds that the bankrupt's "representations" were not "statement[s] in writing respecting his financial condition." Continuing, he also found § 14, sub. c (1) inapplicable, since that provision does not apply to a situation in which mere intent to defraud is specified as an objection. Regarding the Referee's

finding and analysis of § 14, sub. c(1) this court has no disagreement. Therefore, no further discusion of that section is required.

Section 14, sub. c(3) provides that:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * obtained * * * money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition * * *."

The Referee was satisfied that the bankrupt had no intent to defraud the objectant creditor and that his representations to the objectant creditor were not statements in writing respecting financial condition.

"The test set forth in Industrial Bank of Commerce v. Bissell, 2 Cir., 1955, 219 F.2d 624, 626, is that under Section 14, sub. (3) of the Bankruptcy Act an objecting creditor must establish three major factors: '(1) that the bankrupt, for the purpose of obtaining money or property on credit, made a written statement respecting his financial condition, (2) that such statement was "materially false," and (3) that it was relied upon by the objecting creditor.'" In re Stone, supra, 172 F.Supp. at 148–49.

The relationship between the bankrupt and the objectant creditor is one commonly known as factoring. The bankrupt, in order to secure a loan, would, in accordance with a prior agreement with the Royal National Bank, submit a promissory note to the creditor bank assigning a number of invoices allegedly representing accounts receivable. Attached to the promissory note would be a "schedule of accounts receivable". Bankrupt had previously warranted that the accounts receivable assigned to the creditor would "constitute, respectively, valid obligations in the amounts specified by us, and are based on a bona fide transaction, (absolute and unconditional sale),

and that the specific items of merchandise involved therein are in strict accord with the order(s) of the particular customer, and that the same will have been shipped or delivered prior to the execution and delivery of said respective assignments." See Objectant's Exhibit 1.

▆ Implicit in the submission of the schedule of accounts receivable, therefore, is the representation that bankrupt now owns an interest in these debts, i. e., accounts receivable, which are available as collateral to secure the note. This amounts to a statement respecting bankrupt's financial condition. See Scott v. Smith, 232 F.2d 188 (9th Cir. 1956). In Scott, bankrupt had typed "This note is secured by a Deed of Trust bearing even date herewith," on the face of his promissory note to evidence a $5,000.00 loan given to him by the objector. The court held that the implication, in that statement, that "some such deed of trust did secure the note" did not amount to a statement respecting financial condition. However, it found that another implication of the statement, namely, that bankrupt then had some ownership or control of property, did amount to a statement respecting financial condition. The court holds that bankrupt's promissory notes, with schedules of accounts receivable attached thereto, are statements in writing respecting bankrupt's financial condition.

▆ To satisfy the statutory requirements prohibiting discharge, these statements or any one of them must be false. To constitute a false statement within the meaning of section 14, sub. c(3), the statement either must have been made with an intent to deceive, Feldenstein v. Radio Distributing Co., 323 F.2d 892 (6th Cir. 1963) or "must have been 'made and acquiesced in either with actual knowledge that it was incorrect, or with reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct.'" In re Stone, supra, 172 F.Supp. at 149.

The case is hereby remanded to the Referee for reconsideration of his Findings of Fact and Conclusions of Law in the light of this opinion.

Settle an order consistent herewith on or before ten (10) days from the date hereof.